UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
:
ZHANG Jingrong, ZHOU Yanhua, ZHANG          :
Peng, ZHANG Cuiping, WEI Min, LO Kitsuen,   :
CAO Lijun, HU Yang, GUO Xiaofang, GAO       :
Jinying, CUI Lina, XU Ting, BIAN Hexiang,   :      **REPORT AND RECOMMENDATION**
:
            Plaintiffs,                        :      15 CV 1046 (SLT) (VMS)
:
     -against-                        :
:
Chinese Anti-Cult World Alliance (CACWA),   :
Michael CHU, LI Huahong, WAN Hongjuan,      :
ZHU Zirou, and DOES 1-5 Inclusive,          :
:
            Defendants.                        :
:
---------------------------------------------------------- X

**VERA M. SCANLON, United States Magistrate Judge:**

       Before the Court on referral from the Honorable Sandra L. Townes, see ECF No. 31, is

Defendants' partial motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure

("Fed. R. Civ. P.") 12(b)(6).  For the reasons stated herein, this Court respectfully recommends

that Defendants' motion be **denied**.

      **I.**       **BACKGROUND**

          **A.**      **Procedural Background**

       On March 3, 2015, Plaintiffs Zhang Jingrong ("Jingrong"),[1] Zhou Yanhua ("Yanhua"),

Zhang Peng ("Peng"), Zhang Cuiping ("Cuiping"), Wei Min ("Min"), Lo Kitsuen ("Kitsuen"),

Cao Lijun ("Lijun"), Hu Yang ("Yang"), Guo Xiaofang ("Xiaofang"), Gao Jinying ("Jinying"),

Cui Lina ("Lina"), Xu Ting ("Ting"), and Bian Hexiang ("Hexiang") commenced this action by

---

[1]     For ease of reference, I often refer to parties by their given name as a convenient
shorthand because several parties have the same surnames.

filing their Complaint.  See Complaint, ECF No. 2.  In lieu of filing an answer, Defendants

Chinese Anti-Cult World Alliance ("CACWA"), Michael Chu ("Chu"), Li Huahong

("Huahong"), Wan Hongjuan ("Hongjuan"), and Zhu Zirou ("Zirou") sought a pre-motion

conference, pursuant to District Judge Townes's Individual Rules, regarding their proposed

partial motion to dismiss.  See ECF No. 14.  Plaintiffs opposed the substance of Defendants'

proposed motion to dismiss, and they requested that District Judge Townes permit the Parties to

proceed directly to briefing without the need for a pre-motion conference.  See ECF No. 15.  The

Court denied Defendants' request for a pre-motion conference, but it granted Defendants leave to

file their motion to dismiss.  See ECF No. 16.

Defendants served their motion to dismiss on Plaintiffs.  See ECF No. 21.  Plaintiffs

served their opposition papers, see ECF No. 25, and Defendants served their reply papers, see

ECF No. 26.  Plaintiffs subsequently sought leave to file a sur-reply, which I granted on January

28, 2016.  See ECF No. 35.  The parties have engaged in discovery during the pendency of this

motion.

### B.    Factual Background

The following information is derived from the Complaint, unless otherwise noted.  The

information is presented in the light most favorable to Plaintiffs, for the purposes of this motion

only.  See In re Thelen LLP, 736 F.3d 213, 218 (2d Cir. 2013) (on a motion to dismiss, the court

must "accept all factual allegations in the complaint as true and draw all reasonable inferences in

plaintiff's favor").  Plaintiffs' Complaint alleges various claims pursuant to common law and

statutes under 42 U.S.C. § 1985(3), 18 U.S.C. § 248 and New York Civil Rights § 79-n.

Plaintiffs in this action are individuals who reside in or have visited Flushing, Queens,

New York who either practice Falun Gong or have been mistakenly identified as practitioners of

Falun Gong.  <u>See</u> Complaint, ECF No. 2 ¶ 2.  Falun Gong is a peaceful, spiritual religion based on the tenets of Zhen, Shan, and Ren (truthfulness, compassion and tolerance), and has much in common with the spiritual practices of Taoism and Buddhism.  <u>Id.</u> ¶¶ 3, 5, 170.  Falun Gong practitioners engage in religious activities in Flushing at five designated sites situated within walking distance of Falun Gong's Spiritual Center, each of which operates as an extension of the Spiritual Center.  <u>Id.</u> ¶ 6.  Plaintiffs staff and maintain these sites at which they distribute Falun Gong literature, including religious and protest materials.  <u>Id.</u>

Defendant CACWA is a not-for-profit corporation registered under the laws of New York State; it was established in 2008.  <u>Id.</u> ¶ 36.  According to CACWA's Certificate of Incorporation, its mission is to expose Falun Gong as an evil and dangerous threat to society.  <u>Id.</u> ¶ 9. CACWA's printed materials and websites indicate that CACWA was created to wage a "<u>douzheng</u>" campaign against Falun Gong practitioners in New York, particularly those residing in Flushing.  <u>Id.</u> ¶ 37.  Roughly translated, <u>douzheng</u> means "crackdown," "violent suppression" or "violent attack,"[2] and in post-Cultural Revolution Chinese Communist Party parlance, is a call to eradicate or suppress a dissident group.  <u>Id.</u>  A key objective of a <u>douzheng</u> campaign is the forced conversion of targeted groups by compelling members to renounce their political or religious beliefs, supported by a propaganda campaign which, similar to that which was carried out in Nazi Germany during World War II, characterizes its victims as appropriate targets of violence and abuse.  <u>Id.</u> ¶ 49.

---

[2]     Defendants argue that Plaintiffs have purposely used hyperbolic translations of this term. <u>See</u> Defendants' Reply Memorandum, ECF No. 26, p. 9.  For purposes of this motion only, the Court accepts Plaintiffs' definitions.

Originally initiated in China,[3] the anti-Falun Gong campaign was extended into the United States in 2001 by then Communist Party ("Party") Chief Jiang Zemin.  Id. ¶¶ 50-51. Several Party-controlled associations in China, including the China Anti-Cult Association ("CACA"), established anti-Falun Gong organizations in the United States in an attempt to conduct "comprehensive suppression overseas."  Id. ¶ 51.  CACA, which was founded in China in 2000, created branch offices and affiliate organizations around the globe to purge the world of the Falun Gong religion and its believers through a douzheng campaign.  CACWA is one such branch office or affiliate organization.  Id. ¶ 51.

In May 2008, two peaceful Falun Gong protests in Flushing ended in violence when Falun Gong practitioners were attacked by Party loyalists while shouting their intent to "kill" Falun Gong members and describing the religion as "deviated" and an "evil cult."  Id. ¶¶ 54-56. Defendant Huahong was arrested for her participation in one of these two incidents and, just outside the courthouse following her arraignment, Huahong attacked another Falun Gong practitioner.  Id. ¶¶ 57-58.

In September 2008, CACWA was incorporated by Huahong along with Defendant Chu, whose business address was provided as the address for CACWA.[4]  Id. ¶ 59.  Huahong and Chu serve as Co-Chairs of CACWA and, in this capacity, they plan, manage, and organize CACWA's activities in Flushing.  Id. ¶¶ 39-41.  Chu is likewise affiliated in various senior level capacities

---

[3]     Falun Gong was outlawed in China in 1999.  See http://www.china-embassy.org/eng/zt/ppflg/t36589.htm (last visited January 26, 2016).

[4]     According to the New York State Department of State website, CACWA was incorporated on September 24, 2008.  See https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_INFORMATION?p_nameid=3734989&p_corpid=3724446&p_entity_name=chinese%20anti-cult&p_name_type=A&p_search_type=BEGINS&p_srch_results_page=0 (last visited on January 26, 2016).

with several groups that monitor and oversee the behavior of "overseas Chinese" (a term used to describe Chinese individuals or groups living outside of China), which have the collective goal of silencing Party enemies, including Falun Gong.  Id. ¶¶ 69-73.  Defendants Zirou and Hongjuan have collaborated with Chu and Huahong in multiple anti-Falun Gong acts.  Id. ¶¶ 43-44.[5]

CACWA operates a booth in Flushing at 41-40 Main Street, just two blocks from Falun Gong's Spiritual Center,[6] where CACWA supporters distribute fliers and pamphlets calling for the violent suppression of Falun Gong and seeking "overseas Chinese" recruits to assist with their douzheng campaign.  Id. ¶¶ 10, 60, 62, 64.  Many of these fliers, which Chu distributed almost daily, characterize Falun Gong as a "deviated religion," bear a skull and cross bones insignia, and urge Party loyalists to "beat" Falun Gong practitioners.  Id. ¶¶ 91, 121-123.

Since the establishment of CACWA, Chu, Huagong, Zirou and Hongjuan have participated in verbal and physical attacks against the Plaintiffs, as well as others, on the basis of their participation, or perceived participation, in Falun Gong.  While delivering a speech during a recent Chinese New Year Parade in Flushing, Chu called for the "defeat" of Falun Gong and paid attendees to dress in anti-Falun Gong attire.  Id. ¶ 89.  On several occasions during 2013 and 2014, Chu characterized Falun Gong as a "deviated religion" to audiences and threatened practitioners as they partook in parades.  Id. ¶¶ 92-96.  Huagong has physically attacked, threatened or intimidated one or more Plaintiffs on twelve occasions, id. ¶¶ 77, 79, 80-81, 84, 86-

---

[5]     According to Defendants, Zirou and Hongjuan "volunteer" at CACWA.  See Defendants' Memorandum of Law ("Defs' Memo."), ECF No. 27, p. 1.

[6]     See https://www.google.com/maps/dir/40-46+Main+St,+Flushing,+NY+11354/41-40+Main+St,+Flushing,+NY+11355/@40.7576981,-73.8294419,17z/data=!4m8!4m7!1m2!1m1!1s0x89c26011fc2fd9a5:0xae298ff4448dd68d!1m2!1m1!1s0x89c2601211e97acf:0x903a5a1d53ec5114!3e2 (last visited on January 26, 2016).

87; Hongjuan has physically attacked, threatened or intimidated one or more Plaintiffs on nine occasions, id. ¶¶ 101-109; and Zirou has physically attacked, threatened or intimidated one or more Plaintiffs on four occasions, id. ¶¶ 77, 111-114.   On several occasions, these attacks were carried out by more than one Defendant in conjunction with one another, id. ¶¶ 77, 84, 103-104, 113-114, and the majority of the incidents occurred at, or in the immediate vicinity of, Falun Gong's Spiritual Center or its associated sites as members attempted to distribute religious materials and spread the word of the Falun Gong practice, id. ¶¶ 20-26, 28-29, 33, 80-81, 84, 86, 95, 101-102, 107, 109, 111-112.

In addition to these alleged physical and verbal attacks, several of the individual Defendants have attempted to utilize the New York City Police Department ("NYPD") as a means of threatening or intimidating Plaintiffs.  For example, in March 2009, Defendants Huahong and Zhu falsely informed police that Plaintiff Hexiang had assaulted a wheelchair-bound Zhu, prompting Hexiang's arrest.  See Complaint, ECF No. 2 ¶ 77.  A photo of Hexiang in handcuffs was later posted on a CACWA-affiliated website.  Id.  On another occasion in July 2011, Huahong attempted to injure herself and publicly cast blame on Plaintiff Xiurong.  Id. ¶ 81.  Police were called to the scene, forcing Xiurong to flee.  Id.  Finally, Plaintiffs Jingrong, Yanhua and Zhou claim to have been told by Defendant Hongjuan that CACWA members have infiltrated the NYPD and could no longer protect Falun Gong practitioners.  Id. ¶¶ 20-21, 101-102.

The Court will now consider the arguments raised by the Parties in their memoranda of law.

## II.      ANALYSIS

Defendants' motion to dismiss argues that certain claims made in Plaintiffs' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted.

### A.      Standard of Review for a Motion to Dismiss

Rule 8(a)(2) requires a complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The pleading standard of Rule 8 does not require "detailed factual allegations," but it demands "more than labels and conclusions"; "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

Prior to filing a responsive pleading, a defendant may move to dismiss a complaint pursuant to Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 113 (2d Cir. 2010) (quoting Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998)). The Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor." In re Thelen LLP, 736 F.3d 213, 218 (2d Cir. 2013). Nonetheless, courts "'are not bound to accept as true a legal conclusion couched as a factual allegation.'" Twombly, 550

U.S. 544, 555 (2007) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)); see Quitoriano v. Raff & Becker, LLP, 675 F. Supp. 2d 444, 448-49 (S.D.N.Y. 2009) ("At the outset of deciding a motion to dismiss, the court may identify unsupported legal conclusions contained in the pleadings that are not entitled to an assumption of truth.").

On a motion to dismiss, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco, 622 F.3d at 111.

### B.    Plaintiffs' Claims

Relevant to Defendants' partial motion to dismiss, Plaintiffs claim: (1) that Defendants conspired to violate their civil rights and to prevent authorities from providing full, free and equal access to public spaces, pursuant to 42 U.S.C. § 1985(3) (the "deprivation" and "hindrance" clauses, respectively); and (2) that Defendants interfered with their ability to exercise their religious belief pursuant to 18 U.S.C. § 248.

### 1.    Plaintiffs' § 1985(3) Claims

Section 1985(3) contains two separate clauses, commonly referred to as the "deprivation" clause and the "hindrance" clause, each of which provide civil remedies for separate and distinct types of unlawful conduct. See Libertad v. Welch, 53 F.3d 428, 446 (1st Cir. 1995); Upper Hudson Planned Parenthood, Inc. v. Doe, 836 F. Supp. 939, 946 (N.D.N.Y. 1993). Plaintiffs' claims under each of these clauses are addressed separately below.

### a.  The "Deprivation" Clause

The Deprivation Clause of § 1985(3) prohibits two or more persons from conspiring "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). "To state a civil rights conspiracy under § 1985(3), a plaintiff must allege: 1) a

8

conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Britt v. Garcia, 457 F.3d 264, 270 n.4 (2d Cir. 2006) (internal quotations omitted).

Additionally, the Deprivation Clause requires that a plaintiff belong to a protected class. See Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of N.Y., Inc., 968 F.2d 286, 291 (2d Cir. 1992) (explaining that the Supreme Court added a "class-based animus" requirement to a Deprivation Clause claim to prevent it "from being broadly—and erroneously—interpreted as providing a federal remedy for 'all tortious, conspiratorial interferences with the rights of others.'") (quoting Griffin v. Breckenridge, 403 U.S. 88, 101 (1971)). The Second Circuit has defined "class-based animus" to "include discrimination based on religion." Jews for Jesus, 968 F.2d at 291 (citing Colombrito v. Kelly, 764 F.2d 122, 130 (2d Cir. 1985)).

"Because [§ 1985(3)] provides no substantive rights itself but merely 'provides a remedy for violation of the rights it designates, in order to state a claim under [this Section] a complaint must allege, inter alia, that the defendants who allegedly conspired sought, with discriminatory intent, to deprive the plaintiff of a right covered by the Constitution or other laws." Spencer v. Casavilla, 903 F.2d 171, 174 (2d Cir. 1990). "The right must be 'aimed at'; its impairment must be a conscious objective of the enterprise." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 275 (1993) (quoting United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825, 833 (1983)). In other words, a defendant must "do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purpose of producing it." Bray, 463 U.S. at 276.

The Second Circuit has explained that a plaintiff seeking to make out a conspiracy claim must have "some factual basis supporting a meeting of the minds." Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003). The factual basis need not be direct evidence—a plaintiff may also meet this burden by alleging "facts upon which it may be plausibly inferred that the defendants came to an agreement to violate his constitutional rights." Green v. McLaughlin, 480 F. App'x 44, 46 (2d Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009)). "A plaintiff must also show 'with at least some degree of particularity, overt acts which the defendants engaged in which were reasonably related to the promotion of the claimed conspiracy.'" Simpson v. Uniondale Union Free Sch. Dist., 702 F. Supp. 2d 122, 133 (E.D.N.Y. 2010) (quoting Thomas v. Roach, 165 F.3d 137, 147 (2d Cir. 1999)).

Here, Plaintiffs allege that Defendants' actions deprived Plaintiffs of their right to intrastate travel. See Complaint, ECF No. 2 ¶¶ 163-166. The right to intrastate travel has been described as the "fundamental right to travel within a state." Williams v. Town of Greenburgh, 535 F.3d 71, 75 (2d Cir. 2008).[7] Defendants argue that Plaintiffs' Complaint only contains vague and conclusory allegations, none of which indicates that Defendants' actions were based on discriminatory animus, and "severely misconstrue[] events to project a false picture of [a] conspiracy." See Defendants' Memorandum of Law ("Defs' Memo."), ECF No. 27, pp. 11-15. This Court disagrees.

---

[7]     Defendants appear to argue in their reply papers, see ECF No. 26, pp. 2-3, that the constitutional right to "intrastate travel" may not even exist. This is incorrect in light of prevailing Second Circuit precedent. See Spencer v. Casavilla, 903 F.2d 171, 174 (2d Cir. 1990) ("[O]ur Court has held that the Constitution also protects the right to travel freely within a single state."); King v. New Rochelle Municipal Housing Authority, 442 F.2d 646, 648 (2d Cir. 1971) ("It would be meaningless to describe the right to travel between states as a fundamental precept of personal liberty and not acknowledge a correlative constitutional right to travel within a state.").

Although Defendants vigorously contest the facts alleged by Plaintiffs, Plaintiffs' allegations are hardly vague.  According to Plaintiffs, since the incorporation of CACWA in 2008, there have been no less than twenty-five physical and/or verbal attacks on Falun Gong practitioners, or individuals perceived to be Falun Gong practitioners, perpetrated by Chu, Huahong, Zirou, Hongjuan and unknown additional members of CACWA in Flushing.  See Complaint, ECF No. 2 ¶¶ 20-26, 28-29, 33, 77, 79, 80-81, 84, 86, 92-96, 101-109, 111-114. These attacks are described in detail, and almost all occurred in the vicinity of Falun Gong's religious sites and/or as practitioners sought to access the roadways of Flushing in an attempt to distribute Falun Gong religious materials or participate in parades.  Id.

Although the factual circumstances are distinct, the Second Circuit's decision in Spencer v. Casavilla, 903 F.2d 171 (2d Cir. 1990), is informative.  In Spencer, the plaintiffs, administrators for the estate of their deceased son, Samuel Spencer, claimed that the defendants, four men who had been convicted of murdering Spencer, conspired under § 1985(3) to deprive Spencer of his constitutional right to intrastate travel.  Id. at 172.  According to the plaintiffs, the defendants attacked Spencer in public on the basis of his race when visiting his sister from out-of-town.  Id. at 175.  The Second Circuit held that the plaintiffs had adequately stated a claim under the Deprivation Clause of § 1985(3), explaining that "[p]lainly the complaint may be read to allege that Spencer had traveled from his home to a different section of the state, and that . . . defendants sought to injure Spencer for having come into their neighborhood."  Id.

When Chu, Huahong, Zirou and Hongjuan's alleged violent acts are viewed against the backdrop of CACWA's incorporation and mission statement, see Complaint, ECF No. 2 ¶ 9, Chu's affiliation with several Party-backed groups intent on suppressing the practice of Falun Gong in the United States, id. ¶¶ 69-73, and the publications and materials routinely created and

distributed by CACWA's members (including the individual Defendants) threatening the "eradication" and "violent suppression" of Falun Gong, id. ¶¶ 59, 60, 69, 73, 76, 100-102, 108, 118, the existence of a conspiracy to deprive Plaintiffs of their right to intrastate travel can be reasonably inferred.  See Ashcroft, 556 U.S. at 678; see LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir. 1995) ("A conspiracy . . . need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct.").  Plaintiffs' complaint is consistent with the Spencer analysis as it alleges that Plaintiffs traverse Flushing as means of spreading the practice of Falun Gong, and that Defendants, through acts of violence and intimidation, seek to injure Plaintiffs for doing so in their neighborhood.  See Spencer 903 F.2d at 175 (theorizing that the plaintiff could prove that the defendants conspired to impede his right to intrastate travel when they attacked and killed plaintiff for having entered the defendants' neighborhood).  Plaintiffs' claims that they were repeatedly attacked in the manner alleged make it plausible that Defendants "act[ed] at least in part for the very purpose of," Bray, 463 U.S. at 276 (emphasis added), infringing on Plaintiffs' right to intrastate travel.

In terms of class-based animus, Defendants argue that Plaintiffs "misunderstand Defendants' mission" and describe their disagreement with Falun Gong as a mere difference in ideology.  See Defs' Memo., p. 12.  This position must be rejected at least on this motion to dismiss.  Frequent threats to "kill" and "dig out [the] hearts, livers and lungs" of Falun Gong practitioners, see Complaint, ECF No. 2 ¶¶ 101-102, 108, and the call for a douzheng campaign against Falun Gong, if true, describe religious-based animus sufficient to pursue a claim under § 1985(3).  See Colombrito v. Kelly, 764 F.2d 122, 131 (2d. Cir. 1985) (explaining that parents' attempt to "deprogram" their son, a process designed to force him to renounce his religious

beliefs, constituted the "anti-religious animus or discriminatory intent required by § 1985(3)");
Tchatat v. City of New York, 14 Civ. 2385 (LGS), 2015 WL 5091197, at *5 (S.D.N.Y. Aug. 28,
2015) (finding that discriminatory animus was adequately pled on the basis of the alleged
conspirators' use of a racial slur); Germain v. M&T Bank Corp., 13 Civ. 7273 (KMK), 2015 WL
3825198, at *4, 25 (S.D.N.Y. June 19, 2015) (dismissing § 1985(3) conspiracy claim on other
grounds, but noting that discriminatory animus was properly pled where the defendant
corporation's employees alluded to fact that the plaintiff had ties to the Albanian mob and
"express[ed] anti-Muslim sentiment").

Accordingly, this Court respectfully recommends that Defendants' motion to dismiss
Plaintiffs' conspiracy claim under the "deprivation" clause be **denied**.

### b.      The "Hindrance" Clause

The Hindrance Clause of § 1985(3) provides that "[i]f two or more persons in any State or
Territory conspire . . . for the purposes of . . . preventing or hindering the constituted authorities
of any State or Territory from giving or securing to all persons within such State or Territory the
equal protection of the laws . . . the party so injured or deprived may have an action for the recovery
of damages . . . ."  "Case law interpreting the Hindrance Clause is sparse." Jenkins v. Miller, 983
F. Supp. 2d 423, 462 (D. Vt. 2013).   "Although the Supreme Court has interpreted [] the
'Deprivation Clause[]' of § 1985(3), it has never construed the Hindrance Clause, and in fact, has
expressly left this question open." Libertad, 53 F.3d at 447 (citing Bray, 506 U.S. at 279-85).
Similarly, and as Plaintiffs point out, it does not appear that the Second Circuit has addressed this
claim in any substantive way either.  See Friends of Falun Gong v. Pac. Cultural Enter., 288 F.
Supp. 2d 273, 280 (E.D.N.Y. 2003).

According to the Ninth Circuit, a claim under the Hindrance Clause requires the following: (1) "the purpose [of the conspiracy] must be to interfere with state law enforcement, not just to interfere with the persons seeking to exercise their legal rights;" (2) the conspiracy must be "directed at a protected class;" and (3) the conspiracy must implicate "a constitutional right." Nat'l Abortions Fed. v. Operation Rescue, 8 F.3d 680, 685 (9th Cir. 1993).[8]

According to Plaintiffs, Defendants "have prevented the constituted authorities of Queens County . . . from giving and securing to [them] full, free, and equal access to the streets." See Complaint, ECF No. 2 at ¶ 168.  It is not entirely clear, but it appears that, in making this allegation, Plaintiffs intend to assert that the constitutional right implicated is the right to intrastate travel.[9]  Defendants, on the other hand, argue that there is "no proof" to support Plaintiffs' claim and point to the fact that Falun Gong maintains multiple religious sites in Flushing, a daily newspaper, and a television station, while CACWA is a "very small" operation. See Defendants' Reply Memorandum ("Defs' Reply"), ECF No. 26, pp. 5-6.

---

[8]     The "protected class" prong of this analysis stems from Bray, in which the "majority [of the Supreme Court] stated in dictum that a cause of action under the Hindrance Clause 'would seem to require the same 'class-based, invidiously discriminatory animus' that the 'deprivation' clause requires.'" Libertad, 53 F.3d at 447 (quoting Bray, 506 U.S. at 281); see Upper Hudson Planned Parenthood, Inc. v. Doe, 836 F. Supp. 939, 950 (N.D.N.Y. 1993) (holding that the majority's view in Bray necessitated the belief that Hindrance Clause claims require the same threshold "class-based" discriminatory animus).

[9]     Plaintiffs do not specifically state in their Complaint what constitutional right underlies their Hindrance Clause claim.  See Complaint, ECF No. 2 ¶ 167, 168.  A review of Plaintiffs' opposition to Defendants' pre-motion conference request, see ECF No. 15, pp. 2-3, and Plaintiffs' opposition to Defendants' motion to dismiss, see ECF No. 25, pp. 16-20, reveal the same ambiguity.  Within Plaintiffs' Deprivation Clause claim, which Plaintiffs explicitly base on the right to intrastate travel, see Plaintiffs' Memorandum of Law in Opposition ("Pls' Opp."), ECF No. 25, p. 4, Plaintiffs claim that Defendants conspired to "prevent Plaintiffs from free and equal access to . . . [the] public streets" of Flushing.  See Complaint, ECF No. 2 ¶ 163.  This same phrase is used by Plaintiffs as the basis for their Hindrance Clause claim.  Id. ¶ 168. Accordingly, the Court construes Plaintiffs' Hindrance Clause claim to invoke the same constitutionally protected right.

In support of their Hindrance Clause claim, Plaintiffs detail several incidents involving, in one form or another, State authorities.  In particular, as previously noted, Plaintiffs point to Hexiang's arrest, which was the result of Defendants Huahong and Zhu falsely informing police that Plaintiff Hexiang had assaulted Zhu, see Complaint, ECF No. 2 ¶ 77; Huahong's attempt to cause the arrest of Plaintiff Xiurong by injuring herself and publicly blaming Xiurong, id. ¶ 81; and Defendant Hongjuan communicating to Falun Gong practitioners that CACWA members had infiltrated the NYPD and were thus incapable of protecting Falun Gong practitioners, id. ¶¶ 20-21, 101-102.

In the absence of precedential case law on the subject, determining whether Plaintiffs have adequately pled a claim under the Hindrance Clause is not an easy task.  What is clear, though, is that Defendants' argument that Plaintiffs lack "proof" of the alleged conspiracy is immaterial at this stage of the litigation.  See Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013) ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.").

In Nat'l Abortions Fed. v. Operation Rescue, 8 F.3d 680 (9th Cir. 1993), the plaintiffs—several abortion providers and two women denied access to non-abortion related family planning services—alleged that a nationwide pro-life association and five individual "blockade" organizers conspired for the purpose of hindering California's State law enforcement officers from securing to women the right to obtain an abortion.  Id. at 686.  According to the plaintiffs, the defendant "blockade" organizers would, utilizing various methods, physically block or impede entrance into medical facilities, and when police arrived, "go limp" and cross their feet at the ankles to "deliberately . . .  prevent police from removing demonstrators in a timely fashion

and maintain[] access to the targeted medical facilities." Id.  The defendants would also

negotiate with police in order to obtain agreements regarding whether they would be arrested and

the timing and conditions of their arrest in order to "deliberately . . . alter police conduct so that

police conduct w[ould] aid in the achievement of defendants' blockade goals." Id. at 687.  The

Ninth Circuit ultimately held that these allegations were sufficient to establish a violation of the

Hindrance Clause of § 1985(3).  Id.

        As with the Deprivation Clause of § 1985(3), Plaintiffs have adequately pled the

existence of a conspiracy under the Hindrance Clause.  When placed in the broad context of the

accompanying allegations regarding CACWA's incorporation, the douzheng campaign, and the

individual Defendants' violent acts, Plaintiffs have alleged a factual basis to believe that

Defendants entered into a conscious agreement with one another to pursue an unlawful purpose.

See Section B(1)(a), supra.  Similarly, the class-based discriminatory animus requirement has

been satisfied based on the alleged verbal attacks and written materials which all appear to be

directed at Plaintiffs solely because of their religion.  Id.  Whether Plaintiffs have successfully

pled the remaining requirements of a Hindrance Clause claim is less clear.

        In the general sense, Defendants' conduct seems to interfere with the State's power to

secure equal protection of the laws to Falun Gong members.  On its face, Defendants' conduct

prompted the false arrest of Hexiang, almost caused the false arrest of Xiurong, and suggests that

CACWA possesses some type of improper influence over the NYPD.  But two more specific

questions must be answered: first, whether the constitutional right interfered with as a result of

Defendants' conduct was Plaintiffs' right to intrastate travel;[10] and second, whether the purpose,

---

[10]     Given the apparent false allegations levied against Hexiang and Xiurong by Defendants
Huahong and Zhu, perhaps Defendants' alleged conduct could be characterized as a conspiracy
to hinder the state from securing Plaintiffs' "Fourth Amendment right of an individual to be free

not just the effect, of the alleged conspiracy was to hinder authorities.  See Libertad, 53 F.3d at 450.

As to the first question, although it is a close call, Plaintiffs' right to intrastate travel appears to be encumbered since, as a result of Defendants' conduct, Plaintiffs could reasonably fear that their mere presence in Flushing could result in improper police detainment or that police officers may disregard their requests for assistance because of CACWA's alleged inside influence.  See Nat'l Abortions Fed., 8 F.3d at 686-87 (finding allegations that Defendants negotiated with police to alter police conduct to aid in the achievement of defendants' goal to block abortion clinics was sufficient to establish a hindrance).  In the same vein, and particularly bearing in mind Hongjuan's claim of undue influence over the NYPD and CACWA's publication of a photo of Hexiang in handcuffs on a CACWA-affiliated website, it can be reasonably inferred that the purpose, and not just the effect, of Defendants' conspiracy was to hinder authorities such that they contributed to the fear and intimidation instilled in Falun Gong practitioners, thus aiding Defendants' overall objective of stemming the spread of the practice and purging its existence from Flushing.  See id.  If CACWA has, in fact, subverted the NYPD in the manner claimed by Plaintiffs, it is demonstrative of an organized and protracted scheme to influence the constituted authorities, and thus could be Defendants' clear and underlying purpose.[11]

Thus, this Court respectfully recommends that Defendants' motion to dismiss Plaintiffs' conspiracy claim under the "Hindrance Clause" be **denied**.

from unreasonable seizures."  Zaniewska v. City of New York, 569 Fed. Appx. 39, 40 (2d Cir. 2014).

[11]    On this motion, the Court does not make any factual determinations as to the substance of Plaintiffs' claims, and particularly does not make any determination that the Defendants have any improper influence over, or in, the NYPD in Queens.

c.    Defenses Applicable to Both the "Deprivation" and "Hindrance" Clause Claims

Defendants raise several possible defenses to liability under both the "deprivation" and "hindrance" clauses of § 1985(3), though they do not attempt to distinguish which defenses apply to which clauses, if they intended to claim any differentiation at all.  In any event, I will address each of these defenses separately.

i.    State Action

Defendants argue that, as a matter of course, a conspiracy claim under § 1985(3) requires state action.  See Defs' Reply, ECF No. 26, pp. 2-3.  As a procedural matter, the Court is not required to consider this argument, which was raised by Defendants for the first time in their reply papers.  See Anghel v. Sebelius, 912 F. Supp. 2d 4, 14 (E.D.N.Y. 2012) ("It is well settled in the Second Circuit that a party may not raise an argument for the first time in his reply brief.") (quoting Morgan v. McElroy, 981 F. Supp. 873, 876 n.3 (S.D.N.Y. 1997)).  Nonetheless, Defendants' argument, and their reliance on United Brotherhood of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825 (1983), to its effect, is unpersuasive.

In Carpenters, the Supreme Court found that an "alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the State is involved in the conspiracy." Id. at 830.  The Supreme Court based its holding on the fact that the First Amendment, by virtue of the Due Process Clause of the Fourteenth Amendment, "protects the individual against state action, not against wrongs done by individuals." Id. at 831 (quoting United States v. Williams, 341 U.S. 70, 92 (1951) (dissenting opinion)).  Thus, where a plaintiff seeks to enforce a right under § 1985(3) which, by definition, requires state interference, state involvement must be demonstrated.  Carpenters, 463 U.S. at 831-33.  Where a plaintiff seeks to vindicate a right under § 1985(3) which is otherwise protected against private encroachment, "[§]

18

1985(3) constitutionally can and does protect those rights from interference by purely private conspiracies." Id. at 833; see Goonewardena v. N. Shore Long Island Jewish Health System, 11 CV 2456 (MKB) (LB), 2012 WL 7802351, at *12 (E.D.N.Y. Nov. 5, 2012) ("[W]here a plaintiff alleges a purely private conspiracy, the federal right allegedly denied by the conspirators must be protected against private, as well as official, encroachment.") (internal quotations omitted), adopted by 2013 WL 1211496 (E.D.N.Y. Mar. 25, 2013).

This point, as it relates to the right of intrastate travel, was aptly demonstrated by the Second Circuit in Spencer, discussed supra.   In Spencer, following the District Court's determination that the plaintiffs' failure to allege that the "defendants either were, or had acted in concert with, state actors" necessitated dismissal of the case, 903 F.2d at 172 , the Second Circuit reversed, holding that the right to intrastate travel was rooted in the "constitutional concepts of personal liberty," id. at 174 (quoting Shapiro v. Thompson, 394 U.S. 618, 629 (1969)), and thus susceptible to private encroachment.   Spencer, 903 F.2d at 174-75.   As such, "it is clear that a claim under § 1985(3) for violation of the constitutional right to travel may be asserted against private defendants; no state action need be alleged or proven." Id.

### ii.        Intracorporate Conspiracy Doctrine

"Under the intracorporate conspiracy doctrine, [] 'members of a single entity cannot be found to have conspired together with such entity or with each other in their capacity as members of the entity.'" Prabir Dhar v. New York City DOT, 10 CV 5681 (ENV), 2014 WL 4773965, at *15 (E.D.N.Y. Sept. 24, 2014) (citing Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978)); Castanza v. Town of Brookhaven, 700 F. Supp. 2d 277, 291 (E.D.N.Y. 2010) ("Under the intracorporate conspiracy doctrine, officers, agents[,] and employees of a single corporate entity

are legally incapable of conspiring together.").  Defendants argue that Chu, Huahong, Zirou and Hongjuan are all agents of CACWA, and therefore protected under this doctrine.

As an initial matter, the intracorporate conspiracy doctrine is inapplicable to Plaintiffs' conspiracy claims because, even though Chu and Huahong co-chair CACWA, Hongjuan and Zirou maintain no formal affiliation with the organization and thus, cannot be said to be part of the corporate entity.[12]  See Little v. City of New York, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) ("Under the intracorporate conspiracy doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of her employment, are legally incapable of conspiring together.").

Even assuming, arguendo, that Hongjuan and Zirou did have some type of official role within CACWA, the intracorporate conspiracy doctrine would not apply for two additional reasons.  First, "where the individuals within a single entity are pursuing personal interests wholly separate and apart from the entity," the intracorporate corporate conspiracy doctrine is inapplicable.  Guichard v. Town of Brookhaven, 26 F. Supp. 3d 219, 228 (E.D.N.Y. 2014).

---

[12]       While I have not taken this fact into consideration given the requirement that the Court "accept all factual allegations in the complaint as true," In re Thelen LLP, 736 F.3d at 218, it is worth noting that Defendants characterize Hongjuan and Zirou as "volunteers."  See Defs' Memo., ECF No. 27, p. 1.  As volunteers, it is entirely possible that Hongjuan and Zirou may have been acting in their capacity as "agents" of CACWA and, therefore, Plaintiffs' claims may be susceptible to the intracorporate conspiracy doctrine as to this aspect of the defense.  See Castanza v. Town of Brookhaven, 700 F. Supp. 2d 277, 291 (E.D.N.Y. 2010) ("Under the intracorporate conspiracy doctrine, officers, agents[,] and employees of a single corporate entity are legally incapable of conspiring together.") (emphasis added).  In other areas of the law, volunteers have been deemed "agents" of the entities with which they are associated.  See e.g., Ezeh v. VA Med. Ctr., 13 Civ. 6563 (EAW), 2014 WL 4897905, at *10 (W.D.N.Y. Sept. 29, 2014) (for purposes of the Federal Tort Claims Act); Dempsey v. Bucknell Univ., 296 F.R.D. 323, 330 (M.D. Pa. 2013) (for purposes of the attorney-client privilege).  At this stage of the litigation, the Court cannot "assay the weight of the evidence which might be offered in support" of the parties' claims or defenses, DiFolco, 622 F.3d at 113, and must accept for purposes of this motion that Hongjuan and Zirou are not "officers, agents [or] employees" of CACWA, as Plaintiffs allege.

Here, Plaintiffs allege that Chu, Huahong, Zirou and Hongjuan participated in at least twenty-five violent attacks against Falun Gong practitioners.  See Complaint, ECF No. 2 ¶¶ 20-26, 28-29, 33, 77, 79, 80-81, 84, 86, 92-96, 101-109, 111-114.  Bearing in mind Defendants' claim that CACWA's stated mission is to "educate and [] warn society about the dangers of Falun Gong" through "harmony and accord," see Defs' Memo., p. 10, it can hardly be said that the individual Defendants' alleged conduct furthered CACWA's corporate objective, as opposed to their own.  See Little, 487 F. Supp. 2d at 442 (when the individuals are "motivated by an independent personal stake in achieving the corporation's objective," the intracorporate conspiracy doctrine does not apply).

Second, Plaintiffs allege that CACWA's purpose is to purge Flushing of Falun Gong practitioners through violence and intimidation on the basis of their religious belief.  See Complaint, ECF No. 2 ¶ 13.  The intracorporate conspiracy doctrine does not provide protection against conspiracy laws when the entity itself was established for the purpose of engaging in the discriminatory acts to be remedied by § 1985.  People by Abrams v. 11 Cornwell Co., 695 F.2d 34, 41 (2d Cir. 1982) ("[I]t would be anomalous in any case to permit an entity which was established for the very purpose of engaging in a discriminatory act to be insulated, and to insulate its members, from liability as conspirators, by virtue of its establishment."), modified on other grounds, 718 F.2d 22 (2d Cir. 1983); see Dombrowski v. Dowling, 459 F.2d 190, 196 (7th Cir. 1972) (recognizing this exception with respect to corporations).  Although the Second Circuit in People by Abrams invoked this exception to the intracorporate conspiracy doctrine in the context of a partnership, it should logically similarly apply to corporations: if CACWA was incorporated with the goal of engaging in discriminatory acts via a coordinated douzheng

campaign against Falun Gong, the incorporation itself cannot protect CACWA and its members from civil conspiracy liability.

### iii.    First Amendment

Defendants make a passing claim that all speech alleged by Plaintiffs is protected by the First Amendment.  See Defs' Memo., ECF No. 27, pp. 16, 18.  This argument is misplaced for two reasons.  First, the vast majority of the speech-related allegations asserted by Plaintiffs likely constitute true threats—at least for purposes of a motion to dismiss—and therefore are not protected by the First Amendment.  See Watts v. United States, 394 U.S. 705, 707 (1969); see also Virginia v. Black, 538 U.S. 343, 359 (2003) ("'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.").

Second, even if the statements allegedly made were not true threats, the subject speech is not the independent basis for Plaintiffs' § 1985(3) claims.  Rather, Plaintiffs permissibly cite the individual Defendants' speech and Defendant CACWA's written materials and publications as evidence of Defendants' racial animus.  See Wisconsin v. Mitchell, 508 U.S. 476, 489-90 (1993) ("The First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent."); see also United States v. Salameh, 152 F.3d 88, 110, 112 (2d Cir. 1998) (finding that use of terrorist materials consisting of videos, handwritten notebooks, and literature as evidence of a criminal conspiracy and motive did not violate First Amendment).

### iv.    Statute of Limitations

"Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate when a defendant raises a statutory bar, such as lack of timeliness, as an affirmative defense and it is clear from the face of

the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." Sewell v. Bernardin, 795 F.3d 337, 339 (2d Cir. 2015) (internal quotation omitted). "The statute of limitations for actions brought pursuant to § [] 1985 is three years." Paige v. Police Dep't of Schenectady, 264 F.3d 197, 199 n.2 (2d Cir. 2001). As such, according to Defendants, to the extent Plaintiffs premise their § 1985(3) claims upon Defendants' actions which occurred more than three years prior to March 3, 2012 (i.e., three years prior to the filing of Plaintiffs' Complaint), those claims are time-barred.

Although it is true that some of the alleged actions taken by Defendants occurred prior to March 3, 2012, see Complaint, ECF No. 2 ¶¶ 29, 30, 34, 54-58, 77-83, 113-114, these actions— according to Plaintiffs—were part of an on-going conspiracy. "When a plaintiff experiences a 'continuous practice and policy of discrimination,' [] 'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994) (quoting Gomes v. Avco Corp., 964 F.2d 1330, 1333 (2d Cir. 1992)). According to Plaintiffs, the most recent acts in furtherance of Defendants' conspiracy occurred in January 2015, see Complaint, ECF No. 2 ¶¶ 129, 130, therefore, it appears from the face of the Complaint that Plaintiffs' conspiracy claims are timely. See Cornwell, 23 F.3d at 704 ("Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period."); see also Sewell, 795 F.3d at 339.

v.      Falun Gong as a "Religion"

Defendants argue that Falun Gong is not a religion, and therefore, its members are not

granted protection under § 1985(3), see Defs' Memo., p. 12; the argument must be rejected at

this stage.  Defendants do not cite to, nor did this Court's own research reveal, any bright-line

rule to determine precisely what constitutes a "religion" for purposes of § 1985(3).[13]  Rather,

Defendants merely refer, without clear citation, to an alleged quote from Falun Gong's

founder—Li Hongzhi—and an apparent passage from the U.S. Department of State's 2000

Human Rights Country Report on China, see Defs' Memo., ECF No. 27, p. 12, which, at best,

provide ambiguous descriptions of the practice.  Plaintiffs, on the other hand, cite to several

Congressional reports and resolutions which characterize Falun Gong as a "religion" and submit

an affidavit from a purported Falun Gong expert who describes Falun Gong's religious

underpinnings in detail.  See Pls' Opp, pp. 12-14.

---

[13]      The term "religion," for purposes of different statutes or Constitutional clauses, is
susceptible to more than one definition.  See United States v. Allen, 760 F.2d 447, 450 (2d Cir.
1985) ("[W]e must acknowledge that 'religion' can have a different meaning depending on
which religion clause of the First Amendment is at issue.").  For example, for purposes of the
free exercise clause of the First Amendment, the Second Circuit has defined religion as an
individual's "'ultimate concern' -- whatever that concern be."  International Society for Krishna
Consciousness, Inc. v. Barber, 650 F.2d 430, 440 (2d Cir. 1981).  "Under this definition, a
touchstone of a religion is the believer's categorical 'disregard [of] elementary self-interest . . . in
preference to transgressing [the religion's] tenets.'"  Allen, 760 F.2d at 450 (quoting Barber, 650
F.2d at 440).  For purposes of a First Amendment claim under 42 U.S.C. § 1983, the Third
Circuit has named two prerequisites for according First Amendment protection to religious
belief: "[a] court's task is to decide whether the beliefs avowed are (1) sincerely held, and (2)
religious in nature, in the claimant's scheme of things." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir.
2000) (en banc).  For purposes of a conscientious objection to military service, there is no
"requirement that the [objector]'s beliefs be grounded in one of the traditional religions."  United
States v. Shapiro, 396 F. Supp. 1058, 1076 (S.D.N.Y. 1975) (citing Welsh v. United States, 398
U.S. 333, 339-40 (1970) ("What is necessary for a[n objector]'s conscientious objection to all
war to be 'religious' . . . is that this opposition to war stem from the [objector]'s moral, ethical,
or religious beliefs about what is right and wrong and that these beliefs be held with the strength
of traditional religious convictions.").

Ultimately, the "evidence" presented by both Parties as to the accurate definition of Falun Gong is immaterial at this stage.  Plaintiffs maintain in their Complaint that Falun Gong is a religion, see Complaint, ECF No. 2 ¶¶ 3, 6, 135, 170, and for purposes of this motion, the Court is required to accept that assertion.  Finding otherwise would require the Court to impermissibly draw inferences in favor of Defendants.[14]  Altman v. J.C. Christensen & Assocs., 786 F.3d 191, 192 (2d Cir. 2015) (When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor") (citing Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010)).

## 2.        Plaintiffs' § 248 Claim

Section 248(a)(2) of the Freedom of Access to Clinic Entrances Act ("FACE") provides a civil remedy against whomever, "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship."  Defendants' argument for dismissal of Plaintiffs' FACE claim is three-fold: (1) Falun Gong is not a "religion," nor does it maintain a place of worship; (2) Congress's intent when passing FACE was to provide a remedy for those harmed by anti-abortion activists who interfered with the right of women seeking reproductive healthcare services, not to protect religious freedoms; and (3) Plaintiffs' allegations are vague.  See Defs' Memo., ECF No. 27, pp. 22-24.  None of these arguments has any merit.

---

[14]        It is likewise worth noting that on several occasions, for asylum purposes, the Second Circuit has suggested that Falun Gong is a religion.  See Mindeng Zheng v. Holder, 465 Fed.Appx. 35, 41 n.7 (2d Cir. 2012) ("Changed personal circumstances may include . . . conversion to a new religion such as Christianity or Falun Gong."); Jin Chen v. United States DOJ, 426 F.3d 104, 115 (2d Cir. 2005) (affirming the denial of asylum on other grounds, but characterizing Falun Gong as a religion).

First, as discussed above, <u>see</u> Section B(1)(c)(v), <u>supra</u>, for purposes of this motion, the Court accepts as true Plaintiffs' claim that Falun Gong is a religion.  Similarly, Plaintiffs clearly assert that Falun Gong practitioners engage in religious observance at a "Spiritual Center," as well five associated religious sites.  <u>See</u> Complaint, ECF No. 2 ¶¶ 3, 5, 6, 171.  To credit Defendants' argument at this juncture would be to credit their "facts" over Plaintiffs, which the Court simply cannot do.  <u>See</u> <u>Altman</u>, 786 F.3d at 192.

Second, the plain language of FACE dictates that it provides protection to those seeking to exercise their First Amendment right of religious freedom at a place of religious worship.  <u>See</u> <u>Lamie v. U.S. Trustee</u>, 540 U.S. 526, 534 (2004) ("[W]hen [a] statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."); <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842 (1984) (Courts "must give effect to the unambiguously expressed intent of Congress."); <u>see also</u> <u>Metro. Washington Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.</u>, 501 U.S. 252, 280 (1991) ("Going behind the plain language of a statute in search of a possibly contrary . . . intent is a step to be taken cautiously even under the best of circumstances.") (internal citation & quotation omitted).  Defendants' argument that the title of FACE—Freedom of Access to Clinic Entrances—would require the Court to find that only those seeking to enter abortion clinics were meant to fall under its protection is a position that lacks merit.  <u>See</u> <u>Thistlethwaite v. Dowty Woodville Polymer, Ltd.</u>, 110 F.3d 861, 866 (2d Cir. 1997) ("Headings and titles are not meant to take the place of the detailed provisions of the statutory text; nor are they necessarily designed to be a reference guide or a synopsis.") (internal quotation marks & alterations omitted).  Even if Congress's foremost intent was to protect women seeking reproductive health services, it is no less true that Congress also intended to

26

protect those engaging in religious observance.  See H.R. Rep. No. 103-488 (1994) (explaining that alterations to the phrasing of § 248 were "a reflection of the profound concern of the Congress over private intrusions on religious worship, and the judgment of the Congress that the exercise of the right to religious liberty deserves federal protection" and "covers only conduct occurring at or in the immediate vicinity of a place of religious worship, such as a church, synagogue or other structure or place used primarily for worship."); see also United States v. Dinwiddie, 76 F.3d 913, 923 n.6 (8th Cir. 1996) ("FACE also applies to conduct that interferes with religious services conducted in a place of worship.").

Third, with regard to Defendants' claim of "vagueness," to the contrary, Plaintiffs' Complaint details numerous incidents in which the individual Defendants attacked, threatened or attempted to intimidate Plaintiffs while they were lawfully exercising their right of religious freedom at the Falun Gong Spiritual Center, or its affiliated sites.  See Complaint, ECF No. 2 at ¶¶ 20-22 (verbal threats against three Plaintiffs and destruction of religious materials at Falun Gong designated site), 28, 33, 80, 84 (overturning of table containing religious materials at Falun Gong designated site), 86, 101-102, 107 (destruction of religious materials at Falun Gong designated site and assault of two Plaintiffs), 109 (assault of one Plaintiff at Falun Gong designated site), 111-113.  This conduct, if true, falls squarely within the protections of FACE. See United States v. Weslin, 964 F. Supp. 83, 84 (W.D.N.Y. 1997) (FACE "prohibits three types of conduct: use of force, threat of force, and physical obstruction").

Thus, this Court respectfully recommends that Defendants' motion to dismiss Plaintiffs' FACE claim be **denied**.

## III.    CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the District Court **deny** Defendants' motion to dismiss in its entirety.

## IV.    OBJECTIONS

Written objections to this Report and Recommendation must be filed with the Clerk of Court and in accordance with the Individual Rules of the District Judge within fourteen days of service of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b).  A failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this report and recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b); see Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Dated: Brooklyn, New York
       January 28, 2016

*Vera M. Scanlon*
—————————————————
VERA M. SCANLON
United States Magistrate Judge