**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ZHANG Jingrong, ZHOU Yanhua, ZHANG Peng,
ZHANG Cuiping, WEI Min, LO Kitsuen, LI Xiurong,
CAO Lijun, HU Yang, GAO Jinying, CUI Lina, XU Ting,
and BIAN Hexiang,

      Plaintiffs,

      vs.

Chinese Anti-Cult World Alliance (CACWA), Michael
CHU, LI Huahong, WAN Hongjuan, ZHU Zirou, &
DOES 1-5 Inclusive,

      Defendants.

No. 15-CV-1046 (SLT) (VMS)

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

TERRI E. MARSH
HUMAN RIGHTS LAW FOUNDATION
1875 K Street NW
Suite 400
Washington D.C. 20006
(202) 697-3858

JONATHAN C. MOORE
JOSHUA MOSKOVITZ
BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016
(212) 490-0400

Dated:   November 10, 2017

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ................................................................................................................................1

STATEMENT OF UNDISPUTED FACTS ....................................................................................2

    A.    Undisputed Facts that Falun Gong is a Religion ...............................................2

    B.    Undisputed Facts as to Defendants' Counterclaims ........................................7

STANDARD OF REVIEW FOR SUMMARY JUDGMENT ...............................................8

ARGUMENT ......................................................................................................................................9

    I.    THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND
    PLAINTIFFS HAVE SHOWN THEY ARE ENTITLED TO
    JUDGMENT AS A MATTER OF LAW THAT FALUN GONG IS
    A RELIGION PROTECTED BY FEDERAL AND STATE LAW 9

        A.    Federal and New York civil rights laws protect against private
        conspiracies to interfere with the constitutionally-protect
        freedom to exercise one's religion ................................................. 9

        B.    The Belief System and Practices of Falun Gong Meet the
        Religious Definition Test Set Forth by the Supreme Court,
        the Second Circuit, and other Circuit Courts ......................... 11

            1.    The Supreme Court ....................................................... 11

            2.    The Circuit Courts of Appeals ..................................... 12

                a.    Second and Third Circuits ............................. 12

                b.    Tenth Circuit Court of Appeals .................... 14

                c.    District of Columbia and Seventh Circuit
                Courts of Appeals............................................ 15

                d.    Other Circuits ................................................. 16

        C.    Other Authorities Treat Falun Gong as a Religion ............... 16

        D.    Defendants' Disagreements with the Tenets of Falun Gong
        Are Irrelevant ................................................................................. 19

II.    DEFENDANTS' BASELESS AND TIME-BARRED
       COUNTERCLAIMS ................................................................................. 19

       A.    Negligence claims incompatible with assault and battery
             allegations ................................................................................ 19

       B.    Defendant Zhu's counterclaims ................................................ 21

       C.    Defendant Li's counterclaims ................................................... 22

       D.    Defendant Wan's counterclaims ............................................... 22

CONCLUSION ............................................................................................................. 23

**TABLE OF AUTHORITIES**

CASES                                                                                    PAGE

*Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981) ................................................................13

*Alvarado v. City of San Jose*, 94 F.3d 1223 (9th Cir. 1996) ......................................................16

*Brown v. Eli Lilly & Co.*, 654 F.3d 347 (2d Cir. 2011) ...............................................................8

*Cordiano v. Metacon Gun Club, Inc.*, 575 F. 3d 199 (2d Cir. 2009) ...........................................8

*Cutter v. Wilkinson,* 349 F.3d 257 (6th Cir. 2003) ...................................................................16

*DeHart v. Horn*, 227 F.3d 47 (3d Cir.  2000) ...........................................................................13

*Doswell v. Smith*, No. 94-6780, 1998 U.S. App. LEXIS 4644 (4th Cir. Mar. 13, 1998) .........16

*E.E.O.C. v. United Health Programs of America, Inc.*, 213 F. Supp. 3d 377 (E.D.N.Y. 2016) .....8

*Fincher v. Depository Trust & Clearing Corp.,* 604 F. 3d 712 (2d Cir. 2010) ............................8

*Founding Church of Scientology v. United States*, 409 F.2d 1146 (D.C. Cir. 1969) ...................15

*Heffernan v. City of Patterson*, 136 S. Ct. 1412 (2016) ..............................................................6

*Int'l Soc'y for Krishna Consciousness, Inc. v. Barber,* 650 F.2d 430 (2d Cir. 1981) .............. 12, 13

*Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of N.Y., Inc.*, 968 F.2d 286 (2d Cir. 1992) ...............9

*Kaufman v. McCaughtry,* 419 F.3d 678 (7th Cir. 2004) ........................................................ 15, 16

*Love v. Reed*, 216 F.3d 682 (8th Cir. 2000) ..............................................................................16

*Malnak v. Yogi*, 592 F.2d 197 (3d Cir. 1979) ...........................................................................13

*Mazurkiewicz v. N.Y.C. Transit Auth.*, 810 F. Supp. 563 (S.D.N.Y. 1993) .............................20

*Mazzaferro v. Albany Motel Enters.*, 127 A.D.2d 374 (3d Dep't 1987) ...................................20

*Rivera v. Smith,* 63 N.Y.2d 501 (1984) ....................................................................................10

*Tatum v. City of N.Y.*, No. 06 Civ. 4290 (BSJ)(GWG), 2009 WL 124881 (S.D.N.Y. Jan. 20, 2009) .....20

*Torcaso v. Watkins,* 367 U.S. 488 (1961) ........................................................................... 11, 19

*U.S. v Ballard*, 322 U.S. 78 (1944) ................................................................................... 11, 19

**CASES**                                                                          **PAGE**

*United States v. Allen*, 760 F.2d 447 (2d Cir. 1985) .................................................13

*United States v. Meyers*, 95 F.3d 1475 (10th Cir. 1996) ......................................... 14, 15

*United States v. Seeger*, 380 U.S. 163 (1965) .............................................................12

*United States v. Sun Myung Moon*, 718 F.2d 1210 (2d Cir. 1983) ...............................12

*Washington Ethical Society v. District of Columbia*, 249 F.2d 127 (D.C. Cir. 1957) ......................................11

*Welsh v. United States*, 398 U.S. 333 (1970) .............................................................12

*Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336 (2d Cir. 2010) ......................8

**STATUTES**

18 U.S.C. § 248 ...............................................................................................1, 9-10

42 U.S.C. § 1985 ................................................................................................ 1, 9

New York Civil Rights Law § 79-n ................................................................... 1, 10

C.P.L.R. § 214 ........................................................................................................21

C.P.L.R. § 215 ................................................................................................. 21, 22

**RULES**

Federal Rule of Civil Procedure 56 ..........................................................................1

**CONGRESSIONAL MATERIALS**

H. Res. 304, 108th Cong. (2004) ............................................................................18

H. H. Res. 605, 111th Cong. (2010) .......................................................................18

H. Res. 281, 113th Cong. (2014) ............................................................................18

S. Res. 232, 112th Cong. (2011) .............................................................................18

**BOOKS AND ARTICLES**                                                                        **PAGE**

David Becker, "Free Exercise of Religion under the New York Constitution," 1999 CORNELL L.

REV. 1088, 1094 ..................................................................................................................10

Scott Fein & Andrew Ayers, "Protections in the New York State Constitution Beyond the Federal

Bill of Rights," at 1, 19 (2017).........................................................................................10

Jim Rossi, "Institutional Design and the Lingering Legacy of Antifederalist Separation of Powers

Ideals in the States," 52 VAND. L. REV. 1167, 1218 (1999) ..................................................10

William James, *The Varieties of Religious Experience* (1910) ...............................................13

Paul Tillich, *Theology of Culture* (1959) ...........................................................................13

Paul Tillich, *Dynamics of Faith* (1957) ............................................................................13


**OTHER**

Book of Job..................................................................................................................3

Sermon on the Mount......................................................................................................3

Teachings of the Dalai Lama, "Compassion and the Individual," *available at*

www.dalailama.com/messages/compassion-and-human-values

# INTRODUCTION

Federal Rule of Civil Procedure 56(a) requires summary judgment on individual claims or defenses, as well as any "part of [a] claim," so long as "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Plaintiffs submit this memorandum of law in support of their motion for partial summary judgment that Falun Gong is a religion protected under the federal and state laws that plaintiffs have sued under, and to dismiss several of Defendants' counterclaims as untimely and because there is no support for them in the record.

This is an action arising from the Defendants' campaign of intimidation and violence aimed at Plaintiffs because of their religious practice of Falun Gong, or perceived affiliation with Falun Gong. It is brought pursuant to 42 U.S.C. § 1985(3), 18 U.S.C. § 248(a)(2), New York Civil Rights Law § 79-n and New York common law. The Defendants systematically stalked, harassed, attacked, and threatened to kill the Plaintiffs based on their Falun Gong practice, or perceived practice. Almost all of these incidents occurred in the vicinity of Falun Gong's religious sites or as Falun Gong practitioners sought to access the roadways to distribute Falun Gong religious materials or participate in Falun Gong parades.

This partial summary judgment motion is necessary and important because Defendants have tried to turn this litigation in a referendum on Falun Gong. If summary judgment is not granted here, we expect Defendants will use the trial to improperly paint Falun Gong as a "cult" and otherwise confuse the jury with strawman attacks on Falun Gong beliefs the Defendants say are "weird" or "strange." In fact, Falun Gong beliefs are a part of broader Eastern Asian traditional beliefs and many are shared with the western world's largest religions. There is no dispute of material fact that Falun Gong is a religion under any possible definition. It will distract and confuse the jury, and unnecessarily prolong the trial, to leave this issue unresolved, and because there is no

material dispute on the matter, the Court should grant summary judgment that Falun Gong is a religion.

Furthermore, many of Defendants' counterclaims are untimely and find no support in the record evidence. In short, Defendants pled frivolous counterclaims accusing Plaintiffs of attacking them, when, in their own depositions, the Defendants (for the most part) could not identify a single date, time, or attacker in any of these incidents. Plaintiffs' depositions, on the other hand, confirmed the particulars of each incident in which Defendants attacked them, and there is video and photographic evidence corroborating those accounts. Since these counterclaims are frivolous and were brought well past the statute of limitations, they should be dismissed on summary judgment.

## STATEMENT OF UNDISPUTED FACTS

### A. Undisputed Facts that Falun Gong is a Religion

It is an undisputed fact in this litigation that Falun Gong is a religion. Not only, as detailed below, do we set forth, based on expert testimony and related documents and government publications, the basis for this belief that Falun Gong is a religion, the Defendants in this case have offered no competent evidence to the contrary. In fact, at the deposition of Defendants' "expert", Dr. Xia Ming, Defendants' counsel stipulated on the record that Dr. Xia was not prepared to offer an opinion on whether Falun Gong is a religion. Falun. Pls' Local Rule 56.1 Statement (attached hereto) ¶57 (hereinafter "Pls' 56.1")

Li Hongzhi founded Falun Gong (which is also called Falun Dafa) in 1992 in China. Taught initially through lectures delivered by Mr. Li, in 1994 the core teachings of Falun Gong were written down and published in "Zhuan Falun," which serves as the equivalent of the Old and New Testaments in the lives of Falun Gong believers. Defined as the core religious text or "bible" of Falun Gong, Zhuan Falun is offered to believers as the sole guide to their religious practice, often

referred to as "cultivation." This practice of cultivation depends on the repeated reading of Zhuan Falun, known as "Fa study." Other writings and lectures of Mr. Li are offered only as "assisting materials" that provide illustrations of core tenets set forth in Zhuan Falun. Pls' 56.1 ¶¶ 1-6.

Zhuan Falun includes, among other things, discussions about the divine creator and its highest manifestation, Zhen-Shan-Ren; ultimate concerns or ideas related to fundamental questions about life, death and other imponderable matters; metaphysical beliefs that address the reality which transcends the physical world; a moral/ethical system that prescribes norms of conduct; and a comprehensive set of beliefs (religious beliefs are not confined to a single question); a founder; important writings; gathering places designated for religious study; designated times for prayer, special diet; and the propagation of the religion. Pls' 56.1 ¶¶ 7-26; *see* Ex. 3 (excerpts from Zhuan Falun)[1]. The central tenets of Falun Gong that are listed below are derived solely from the core religious text of Zhuan Falun.

A Divine Creator.  According to Zhuan Falun, a divine creator, known as DAFA or the Buddha FA, created time and space, the multitude of lives and species, and all of creation. Pls' 56.1 ¶ 7.  The highest manifestation of the "divine creator" is Zhen-Shan-Ren ("Truthfulness-Compassion-Tolerance"); this is the "fundamental characteristic of the universe" which plays a guiding role in the lives of Falun Gong believers at different levels. *Id.* ¶ 8.  Falun Gong believers "cultivate" Zhen-Shan-Ren to "become truthful, compassionate and tolerant in their daily lives." *Id.* ¶¶ 11, 13-18.

Ultimate Concerns.  Like established religions such as Christianity, Judaism, and Buddhism, which address fundamental and ultimate questions having to do with deep and imponderable matters such as the meaning or purpose of life, death, and man's place in the cosmos, *see*, e.g., the Book of Job; the Sermon on the Mount; teachings of the Dalai Lama, "Compassion and the Individual," *available at* www.dalailama.com/messages/compassion-and-human-values, the core

---

[1] All exhibits referenced herein are annexed to the accompanying affirmation of Terri Marsh.

spiritual text of Zhuan Falun similarly addresses such ultimate concerns and questions, e.g., the causes of human suffering, and the ultimate purpose of human life. Pls' 56.1 ¶¶ 9,10.

Cultivation. The practice of cultivation, which plays a prominent role in Eastern religions as well as Falun Gong, is the practice through which believers attain wisdom, enlightenment, salvation, and/or return to their true, original selves. *Id.* ¶ 11.[2] The practice requires ongoing inner reflection to identify and discard attachments to greed, lust, jealousy, hatred, anger, other emotions and desires and (more generally) selfishness, *id.* ¶¶ 19-20, while assimilating more and more to Zhen-Shan-Ren and becoming more compassionate/benevolent, truthful and tolerant, *id.* ¶¶ 13-18. Any cultivator who becomes one with the Divine Creator is an enlightened one – Divine. *Id.* ¶ 11.

Ethical and Moral Codes of Conduct. Religious belief systems often prescribe a way of life that is moral or ethical. *See, e.g.*, the "Sermon on the Mount." The ethical and moral belief structure of Falun Gong similarly describes conduct in such normative terms as "good or evil" and "right or wrong." *Id.* ¶¶ 12-20. Through the cultivation of what is "good" or "right," Falun Gong believers may attain enlightenment and assimilate to Zhen-Shan-Ren, the highest manifestation of the Buddha Fa.[3] *Id.* ¶¶ 11, 13-20. The cultivation of compassion is especially emphasized. *Id.* ¶ 13.[4] Other moral or ethical norms of conduct include such prescriptions as "be good to our parents and children and be considerate of others in all respects," *Id.* ¶ 14, to avoid killing, jealousy, lust, anger, and hatred, and more generally to cultivate "*dè*" (virtue). *Id.* ¶¶ 19-20.

Metaphysical Beliefs. The metaphysical realms of virtually all religions include an array of beliefs that cannot be demonstrated via empirical or theoretical science and may appear to non-

---

[2] The practice of Judaism, Christianity, Buddhism and Taoism are all modes of cultivation that offer salvation to their disciples and adherents. Li Hongzhi Lecture in Sydney, 1996, *available at* http://en.falundafa.org/eng/lectures/1996L.html; Exhibit 3 ¶ 1.

[3] "Buddha Fa" is one designation for the "Divine Creator." S*ee supr*a at 3.

[4] Believers are instructed to cultivate compassion and taught how best to become more compassionate. Pls' 56.1 ¶ 13; Ex. 2 ¶ 18 ("Practitioners, you will suddenly come across conflicts. What should you do? You should always maintain a heart of compassion and kindness. Then, when you run into a problem, you will be able to do well because it gives you room to buffer the confrontation. You should always be benevolent and kind to others, and consider others when doing anything.").

believers as incomprehensible or preposterous. One cannot prove such deep religious convictions as the existence of Yahweh, the birth of Eve, the Fall from Grace, the immaculate conception, the Holy Ghost, the Trinity, the many miracles attributed to Jesus, the belief that saints and the Virgin Mary can perform miracles on God's behalf, the self-described mystical experiences of Yogi, Hindus, and Christian Saints, the revelation of the Absolut, and so on. The metaphysical realm of Falun Gong is similarly a matter of faith. As noted, the Falun Gong metaphysic teaches the existence of a divine creator and its highest manifestation, Zen-Shan-Ren, *id.* ¶¶ 22, 7; the existence of such deities as Buddha Sakyamuni, *id.* ¶ 24(b)-(c); and of multiple dimensions, *id.* ¶ 24(a) where other Buddhas, Daos, and Gods reside, *id.* ¶ 24 (b)-(c). The metaphysical realm further encompasses one's Main Spirit or Primary Soul (also referred to as one's "True Self"), *id.* ¶ 24(e), and such other intangible phenomena as "*dè*" (virtue) and "*gong*" ("cultivation energy"), *id.*; a "*Falun*" (law wheel), *id.* ¶ 24(d); and reincarnation and karma, *id.* ¶ 24(f). Few of these beliefs are unique to Falun Gong. *See, e.g.,* Pls' 56.1 ¶¶ 50-51, 52-54, 60, n. 4.

Accoutrements. The tenets of Falun Gong encourage the propagation of its views, *id.* ¶ 31, offer a diet that does not include the imbibing of uncooked food or alcohol, *id.* ¶ 26, and encourage believers to perform the five exercises and study their bible together at special gathering places, *id.* ¶ 25. The iconography of Falun Gong takes the form of images of the Falun (or law wheel), of Buddhas, Taos, Bodhisattvas, and Celestial Maidens. *Id.* ¶ 26. The practice also includes the celebration of specific holidays including the celebration of Falun Dafa Day on May 13th. *Id.*

Falun Gong is part of a religious tradition with ancient roots in East Asia. As Dr. Arthur Waldron, an expert in Chinese history and the history of religion in China, has opined, Falun Gong's religious teachings are comparable to those of a broader Buddhist, Daoist, and traditional Chinese cosmology. *Id.* ¶ 52. The believers of Falun Gong refer to themselves as part of a larger "Buddhist School" of faith practices, and Zhuan Falun contains sections discussing the historical Buddha,

Sakyamuni, as well as their interpretation of Zen Buddhism and of several other figures and ideas from Buddhist history and scripture. *Id.* ¶ 52 *The* process of reincarnation described in Zhuan Falun is akin to the concept of "karma," or the accumulated effect of good and bad deeds performed in one's life impacting one's subsequent incarnations, which is a feature of other Eastern religions. *Id.* The idea that there are supernatural causes for natural disasters, or unfavorable personal or national events, is a commonly held belief shared by branches of Buddhism including Tibetan Buddhism, as is the importance of maintaining compassion for all living beings. *Id.* The teachings of Falun Gong also emphasize many of the concepts and principles of Daoism, such as the need to "follow the course of nature," instead of imposing one's own will upon the world. *Id.*

 <u>Sincerely Held Beliefs.</u> All of the Falun Gong Plaintiffs affirmed their sincerely held belief in the tenets and practice of Falun Gong. Pls' 56.1 ¶¶ 27-39.[5] Most Plaintiffs stated their regard for Zhen-Shan-Ren as divine principles that serve as guideposts to their faith practice. *Id.* ¶¶ 29(c), 33(c), 34(c), 35(c), 36(b), 37(c), 38(a). Some defined cultivation as a form of purification or spiritual elevation, *id.* ¶¶ 29(c), 33(c), or as a path to enlightenment or salvation, *id.* ¶ 36(b); discussed the ethical or moral requirements as central components of their lives as cultivators, *id.* ¶¶ 33(i), 36(e), 37(c), 38(a); voiced their solid (unshakeable) belief in the tenets of Falun Gong, *id.* ¶¶ 29(c)-(d), 30(f), 31(e), (f), (h), 32(f), 33(c)-(d), (f), 36(f), 37(g), 39(f); and in other ways evinced a deep understanding of other tenets of Falun Gong, *id.* ¶¶ 27-39.

 All have described their diligent adherence to the proscribed practice of Falun Gong through early morning prayer or righteous thoughts, *id.* ¶¶ 29(f), 34(i), 35(g), 37(b), (e); their participation in

---

[5] The phrase "Falun Gong" Plaintiffs" designates those Plaintiffs who believe in and strive to follow the precepts of Falun Gong. From a legal standpoint, it matters not whether the plaintiffs believe in Falun Gong, or were merely perceived to have believed in Falun Gong, when attacked. *Cf. Heffernan v. City of Patterson*, 136 S. Ct. 1412, 1414-15 (2016) (what matters for a § 1983 First Amendment retaliation claim is only that the discriminator *believed* the person was speaking on a matter of First Amendment concern when he retaliated against him because "the constitutional harm … is the same whether or not the [defendant's] action rests upon a factual mistake).

group religious study once a week and daily (group) meditation exercises, *id.* ¶¶ 29(a)-(b), 30(a)-(c), 31(b)-(c), 32(a)-(b), 33(a)-(b), (e), 34(a)-(b), 35(a)-(b), 36(a)-(b), (d), 37(a)-(b), 38(b), (e), 39(a)-(c); and/or the propagation of Falun Gong at the Spiritual Center sites (or tables), *id.* ¶¶ 29(f), 30(d), 31(c), 32(g), 33(f), 34(e), 35(d), 36(e), 37(e), 39(c); in spite of Defendants' twenty-five acts of violence and intimidation, *id.* ¶¶ 31(f), (h), 33(f), 34(g), 36(f), 37(g). Many indicated that they regard the founder of Falun Gong as a sacred figure, akin to a deity. *Id.* ¶¶ 29(d), 31(d), 33(d), 37(d), 38(c). Virtually all described Falun Gong as a religion. *Id.* ¶¶ 29(e), 30(g), 31(i), 32(f), (i), 33(i), 34(h), 35(f), 36(e), 37(d).

Those Plaintiffs who were arrested, persecuted, and tortured in China based on their practice of Falun Gong refused to denounce their beliefs in exchange for freedom. Nor did they discontinue their practice of Falun Gong in spite of current and future retaliatory consequence. *Id.* ¶¶ 31(f), 33(f), 36(f). Those who were asked similarly demonstrated their solid commitment to the practice of Falun Gong in the United States in spite of the violence and intimidation perpetrated against them by the Defendants. *Id.* ¶¶ 30(f), 31(h), 34(g), 37(g), 39(f).

B.    Undisputed Facts as to Defendants' Counterclaims

Defendants Chu, Li, and Zhu filed a series of counterclaims in 2016 grouped in four causes of action: assault and battery (First Cause of Action), New York Civil Rights § 79-n (Second Cause of Action), intentional infliction of emotional distress (Third Cause of Action), and negligence (Fourth Cause of Action). *See* 2d Am. Answer & Countercl. at 35-39 (ECF No. 71); *see also* Answer & Countercl. (ECF No. 43); Am. Answer & Countercl. (ECF No. 52). Defendant Wan alleged essentially the same counterclaims: assault and battery (First Cause of Action), intentional infliction of emotional distress (Second Cause of Action), and negligence (Third Cause of Action). Wan 2d Am. Answer & Countercl. (ECF No. 70). The counterclaims parroted plaintiffs' claims and merely alleged that "in each of the incidents set forth in the Complaint as identified in Counterclaim, in fact

it was the Plaintiffs who" harassed or assaulted the Defendants. *See* 2d Am. Answer & Countercl. at 35 (ECF No. 71); Wan 2d Am. Answer & Countercl. at 15-16 (ECF No. 70). However, Defendants failed to describe Plaintiffs' actions or give any details of these incidents, and depositions of the Defendants confirmed that several of these claims were patently frivolous. Defendant Wan, for instance, admitted that she assaulted Plaintiff Zhang during the January 3, 2016 incident. Pls' 56.1 ¶ 62. In others, the Defendants could not describe specifics of what happened. Many of the counterclaims were also filed more than five years after the underlying incidents, although the longest relevant statute of limitations was three years. These include Defendant Zhu's counterclaims against Plaintiff Zhou Yanhua, Plaintiff Bian Hexiang, Plaintiff Li Xiurong and Plaintiff Cao Lijun. They also include Defendant Li's counterclaims against Bian Hexiang, Gao Jingying, Li Xiurong and Cao Lijun.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is appropriate "only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant entry of judgment for the moving party as a matter of law. *E.E.O.C. v. United Health Programs of America, Inc.*, 213 F. Supp. 3d 377 (E.D.N.Y. 2016) (quotation marks omitted) (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)). "A fact is material if it might affect the outcome of the suit under the governing law.'" *Fincher v. Depository Trust & Clearing Corp.,* 604 F. 3d 712, 720 (2d Cir. 2010) (quotation marks omitted) (quoting *Roe v. City of Waterbury*, 542 F.2d 31, 35 (2d Cir. 2008)).

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non-movant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F. 3d 199, 204 (2d Cir. 2009). In turn, to defeat a

motion for summary judgement, the non-moving party "'must do more than simply show that there are some metaphysical doubts as to the material facts,'" *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and "'may not rely on conclusory allegations or unsubstantiated speculation,'" *id.* (quoting *Federal Deposit Ins. Corp., v. Great Am. Ins. Co.,* 607 F. 3d 288, 292 (2d Cir. 2010).

Applying these standards, Plaintiffs are entitled to summary judgment that Falun Gong is a religion protected under federal and state civil rights law, and certain of Defendants' counter-claims are unsupported by admissible evidence and are barred by the statute of limitations.

## ARGUMENT

## I. THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND PLAINTIFFS HAVE SHOWN THEY ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW THAT FALUN GONG IS A RELIGION PROTECTED BY FEDERAL AND STATE LAW.

### A. Federal and New York civil rights laws protect against private conspiracies to interfere with the constitutionally-protect freedom to exercise one's religion.

Plaintiffs have brought claims against defendants for interfering with their right to religious freedom in violation of 42 U.S.C. § 1985(3), 18 U.S.C. § 248(a)(2), and New York Civil Rights Law § 79-n. A common element of each of these three statutes is that the offensive conduct must be based on or aimed at interfering with a person's religious exercise.

A claim under 42 U.S.C. § 1985(3) lies "'when a plaintiff is injured by a private conspiracy to interfere with his [or her] constitutional rights.'" *Jews for Jesus, Inc. v. Jewish Cmty. Relations Council of N.Y., Inc.*, 968 F.2d 286, 291 (2d Cir. 1992) (citing *Colombrito v. Kelly*, 764 F.2d 122, 130 (2d Cir. 1985)). There must also be "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* In the Second Circuit, "class-based animus" includes "discrimination based on religion." *Id.*

The Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248(a)(2) provides civil remedies against whoever "by force or threat of force or by physical obstruction, intentionally

injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." Thus, the plain text of § 248(a)(2) incorporates First Amendment-protected religious beliefs.

New York, likewise, protects religion from acts of bias-related violence or intimidation. New York Civil Rights Law § 79-n(2) provides:

> Any person who intentionally selects a person or property for harm or causes damage to the property of another or causes physical injury or death to another in whole or in substantial part because of a belief or perception regarding the . . . religion, [or] religious practice . . . of a person, regardless of whether the belief or perception is correct, shall be liable, in a civil action or proceeding maintained by such individual or group of individuals . . . .

The New York Court of Appeals has relied primarily on federal law from 1958 to 1999 to define religion under the free exercise clause. *See* David Becker, "Free Exercise of Religion under the New York Constitution," 1999 CORNELL L. REV. 1088, 1094.[6] Moreover, in the area of religious liberty protections, the New York Court of Appeals has afforded more extensive protections to religious liberty than is forthcoming under its federal counterpart." *See* Scott Fein & Andrew Ayers, "Protections in the New York State Constitution Beyond the Federal Bill of Rights," at 1, 19 (2017) ("the New York Court of Appeals has afforded more extensive protections to religious liberty than is forthcoming under its federal counterpart"); *cf. Rivera v. Smith,* 63 N.Y.2d 501 (1984) (sustaining a Muslim prisoner's right to be free from frisk searches by women guards, a restriction far broader than that afforded under the free exercise clause of the U.S. Constitution). Accordingly, Plaintiffs' beliefs and practices merit protection under Civil Rights Law § 79-n for the same reasons provided *infra* under federal law.

---

[6] When a state court addresses an issue to which both the U.S. Constitution and the state constitution have applicable clauses – such as free exercise and non-establishment of religion – the state court must use the federal authority to define the minimum applicable threshold concerning individual rights. *See* Jim Rossi, "Institutional Design and the Lingering Legacy of Antifederalist Separation of Powers Ideals in the States," 52 VAND. L. REV. 1167, 1218 (1999).

There is no genuine dispute that Falun Gong is a religion protected under 42 U.S.C.

§ 1985(3), 18 U.S.C. § 248(a)(2), and New York Civil Rights Law § 79-n.

**B. The Belief System and Practices of Falun Gong Meet the Religious Definition Test Set Forth by the Supreme Court, the Second Circuit, and other Circuit Courts.**

1. The Supreme Court

In *U.S. v Ballard,* 322 U.S. 78 (1944), the Supreme Court rejected a definition of religion

based on the content of the views espoused. Grounding its approach in history, the Court noted

how profoundly aware the Founding Fathers were of the varied views of religious sects, of the

disagreement among them, and of the lack of any one religious creed on which all men would agree.

For this reason, they fashioned the Constitution to allow the widest possible toleration of conflicting

views. Accordingly, *Ballard* emphasized "[f]reedom of thought, which includes freedom of religious

belief…embraces the right to maintain theories of life and of death and of the hereafter which are

rank heresy to followers of the orthodox faiths." *Id.* at 86. "Men… may not be put to the proof of

their religious doctrines or beliefs." *Id.* "Doctrines that may appear incredible or preposterous to

many are not for that reason, not 'religious.'" *Id.* at 87.

In subsequent cases, the Supreme Court reinforced the *Ballard* approach by refusing to base

a definition of religion in the beliefs of one religion as opposed to others. In *Torcaso v. Watkins,* 367

U.S. 488, 495 (1961), the Court rejected a definition of religion grounded in a belief in god,

emphasizing that many who fled to the United States did so to escape religious intolerance and that

the Establishment Clause means that the government may not in any way privilege the religious

beliefs of some religions over those of others (noting that many religions do not espouse the

worship of a god or gods including Buddhism, Taoism, Ethical Culture and Humanism). *Id.* at 495

n.11.[7] Moreover, in two conscientious objector cases, the Supreme Court held that the test of belief

---

[7] *See also Washington Ethical Society v. District of Columbia*, 249 F.2d 127 (D.C. Cir. 1957) ("Washington Ethical Society could not be denied a tax exemption merely because it did not worship a deity.")

in a religion is based in "[a] sincere and meaningful belief, which occupies in the life of its possessor a place parallel to that filled, by […] God." *United States v. Seeger*, 380 U.S. 163, 166 (1965); *Welsh v. United States*, 398 U.S. 333, 340 (1970) (plurality opinion). In other words, the Court has held that the central consideration in determining whether an individual's beliefs are religious is whether these beliefs play the role of and function as a religion in his life.[8]

There is no dispute that Falun Gong beliefs, as described above and in Plaintiffs' Local Rule 56.1 Statement, play the role of and function as a religion in the lives of the Plaintiffs and other Falun Gong practitioners.

## 2. The Circuit Courts of Appeals

The various Circuit Courts of Appeals have adopted five primary approaches to determining whether a belief system constitutes a religion. As discussed below, the belief system and practice of Falun Gong meets the religious definitions offered by the Second, Third, Tenth, Seventh and District of Columbia Circuit Courts.

### a. Second and Third Circuits

The relevant Second Circuit test is "whether a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the belief by the orthodox belief in God." *Int'l Soc'y for Krishna Consciousness, Inc. v. Barber,* 650 F.2d 430, 440 (2d Cir. 1981) (citing *United States v. Seeger*, 380 U.S. 163, 166 (1965)). "God" is used in its broadest sense as including any object that is "godlike," whether it is or is not a specific deity. *United States v. Sun Myung Moon*, 718 F.2d 1210, 1227 (2d Cir. 1983)) (citing W. James, "The Varieties of Religious Experience" 34

---

[8] The Court in *Seeger* and the plurality in *Welsh* were construing terms of a statute, However, *Seeger* and *Welch* have significantly influenced how courts approach what religion means for the purposes of the First Amendment. *See, e.g., Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (quoting *Fifth Ave. Presbyterian Church v. City of New York,* 293 F.3d 570, 574 (2d Cir. 2002) (quoting *United States v. Seeger,* 380 U.S. 163, 185 (1965).

(1910)).[9] But a "God" is not a prerequisite for religion under Second Circuit Court cases. *See Barber*, 650 F.2d at 440. Instead, the Second Circuit's "approach treats an individual's 'ultimate concern' — whatever that concern be — as his 'religion.'" *Id.* An individual's "ultimate concern," a "concern that is more than intellectual," is a belief parallel to the ultimate belief in God. *Id.* "Under this definition, a touchstone of a religion is the believer's categorical 'disregard [of] elementary self-interest . . . in preference to transgressing [the religion's] tenets.'" *United States v. Allen*, 760 F.2d 447, 450 (2d Cir. 1985) (quoting *Barber,* 650 F.2d at 440).

For purposes of a free-exercise claim under 42 U.S.C. § 1983, the Third Circuit has identified two prerequisites for protection of a religious belief: "[a] court's task is to decide whether the beliefs avowed are (1) sincerely held, and (2) religious in nature, in the claimant's scheme of things." *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en banc). The Third Circuit has also explained that religious beliefs (1) involve discussions about god, spirituality, divine destinies, purity, blessings, miracles and other matters having to do with such deep and imponderable matters related to personal and human morality; (2) comprise a system of beliefs as opposed to an isolated teaching; and (3) include formal and external signs. *Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981).[10]

Plaintiffs' belief system more than meets these tests. All Falun Gong Plaintiffs[11] expressed their sincerely held beliefs in the tenets of the main text of Falun Gong, known as the "Zhuan Falun." *See supra* Statement of Undisputed Facts ("SOF") at § "Sincerely Held Beliefs," at 6-7; *see also* Pls' 56.1 ¶¶ 27-39. The Falun Gong canon addresses such "ultimate concerns" as the causes of

---

[9] The theologian William James defined as 'religious' the "feelings, acts, and experiences of individual men in their solitude, so far as they apprehend themselves to stand in relation to whatever they may consider the divine." William James, *The Varieties of Religious Experience* (1910).

[10] In *Malnak v. Yogi*, 592 F.2d 197, 208 (3d Cir. 1979), the Third Circuit noted that Paul Tillich's thoughts have influenced the courts and commentators. Paul Tillich, a protestant liberal theologian, treated an individual's "ultimate concern" as her or his religion. *See* Paul Tillich, *Theology of Culture* at 7-9 (1959). According to Tillich, the need to be oriented by something beyond the finite realm is a necessity that is inherent within human existence; without it, people have a gap in their existence. Paul Tillich, *Dynamics of Faith* 13 (1957) at 1-2. An "ultimate concern" fills this gap. *Id.*

[11] Eleven of the thirteen plaintiffs are Falun Gong believers; the other two plaintiffs were targeted and harassed by Defendants because they perceived these plaintiffs to be Falun Gong believers.

human suffering, *id.* ¶ 9, the purpose of human life, *id.* ¶ 10, how to reach salvation, *id.* ¶¶ 11, 13-20, and the constituents of a metaphysical realm, *id.* ¶¶ 21-24. These are far more than "intellectual" concerns; believers "disregard elementary self-interest in preference to transgressing" their beliefs. *Id.* ¶¶ 30(f), 31(f), (h), 33(f), 34(g), 36(f), 37(g), 39(f). The ethical requirements are arduous: Falun Gong believers are required to display compassion, tolerance, and virtue in their daily lives, *id.* ¶¶ 13-19; and to eliminate all immoral thoughts and intentions of wrongdoing, jealousy, zealotry, fighting and arguing, and deception, and bullying, *id.* ¶ 20. Falun Gong believers are furthered required to awake early in the morning to pray, practice the Falun Gong five exercises daily, engage in daily study of Falun Gong scripture, propagate the religion, *id.* ¶ 25, and avoid alcohol and uncooked food, *id.* ¶ 26. In addition, the practice includes such formalities as iconography and the celebration of specified holidays. *Id.* Falun Gong is also part of a religious tradition with ancient roots in East Asia, particularly in China. *Id.* ¶ 52.

          b. <u>Tenth Circuit Court of Appeals</u>

In *United States v. Meyers*, 95 F.3d 1475 (10th Cir. 1996), the Tenth Circuit Court of Appeals adopted a test composed of a variety of religious factors that various courts have identified. These factors include:

    a) Ultimate ideas that address deep and imponderable matters and questions about life, purpose, and death, man's sense of being, teleological and cosmological matters;

    b) Metaphysical beliefs, i.e., beliefs that address a reality which transcends the physical and immediately apparent world, often including other dimensions inhabited by spirits, souls, forces, deities or other intangible entities;

    c) A Moral or Ethical System, which prescribe certain acts in normative terms, such as "right and wrong," "good and evil," or "just and unjust," and (often) create duties imposed by some higher power, force, or spirit, that require the believer to abnegate elemental self-interest;

    d) A Comprehension of Beliefs that coalesce to provide the believer with answers to many of the problems and concerns that confront humans. In other words, religious beliefs generally are not confined to one question or a single teaching;

    e) Accoutrements, the presence of the following are may indicate that a particular set of beliefs is religious: A Founder, Prophet, or Teacher; Important Writings; Ceremonies, Ritual or

Protocols; Holidays; Diet or Fasting; Special Gathering Places; Appearance and Clothing; Propagation;

(f) Propagation ("Most religious groups … propagate their views and persuade others of their correctness.)"

*Id.* at 1482-84.

As noted, the practice and systems of beliefs of Falun Gong include all of these factors, i.e., "ultimate concerns" or "ideas," Pls' 56.1 ¶¶ 9-10, in addition to a well-defined metaphysic, *id.* ¶¶ 21-24; a moral and ethical system, *id.* ¶¶ 13-20; a sacred text, Zhuan Falun, *id.* ¶¶ 1-2; a comprehensive system of beliefs, *id.* ¶¶ 7-26, a founder regarded by many as a "teacher," a "deity," or "saint," *id.* ¶¶ 29(d), 31(d), 33(d), 37(d), 38(c); special gathering places for Fa study and meditation, *id.* ¶ 25, a special diet that excludes uncooked meat and alcohol, *id.* ¶ 26; and opportunities and encouragement to proselytize and propagate the religion, *id.* ¶ 25.

### c.   District of Columbia and Seventh Circuit Courts of Appeals

The District of Columbia views religion as belief systems that address underlying theories of man's nature or his place in the Universe, *see Founding Church of Scientology v. United States*, 409 F.2d 1146, 1160 (D.C. Cir. 1969), a definition that clearly applies to Falun Gong, as noted *supra* at 12-13. The Seventh Circuit defines as religious beliefs that deal with issues of "ultimate concern" that occupy a "place parallel to that filled by ... God in traditionally religious persons. In *Kaufman v. McCaughtry,* 419 F.3d 678 (7th Cir. 2004), the Court emphasized that a religion need not be based on a belief in the existence of a supreme being (or beings, for polytheistic faiths, *id.* at 680-82 (citing *Torasco v. Watkins*, 367 U.S. 488, 495 & n. 11 (1961)); nor must it be a mainstream faith *id.* (citing *Thomas v. Review Bd.*, 450 U.S. 707, 714 (1981); *Lindell v. McCallum*, 352 F.3d 1107, 1110 (7th Cir. 2003)).  Nor are distinctions between atheists and believers in deities or a divine realm permitted. *Id.* Instead the Circuit defined as religious beliefs dealing with issues of "ultimate concern" that occupy a "place parallel to that filled by ... God in traditionally religious persons" qualify as religious. *Id.* Insofar as Falun Gong belief system addresses such ultimate concerns as the purpose and meaning

and life, includes a sophisticated metaphysic that it shares with many other Eastern religions in addition to a moral and ethical code of conduct, and a belief in a divine creator and its highest manifestation (Zhen-Shan-Ren), it qualifies as a religion under this test as well.

      d.   <u>Other Circuits</u>

The religious definition tests provided by these five circuits represent the five primary approaches with other circuits generally deferring to and applying one of these respective viewpoints. *See, e.g.*, *Cutter v. Wilkinson*, 349 F.3d 257, 276-68 (6th Cir. 2003); *Doswell v. Smith*, No. 94-6780, 1998 U.S. App. LEXIS 4644, at *9-10 (4th Cir. Mar. 13, 1998). Occasionally the other circuits use a test for the purpose of the particular case – assuming that the test properly defines religion. *See Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000); *Alvarado v. City of San Jose*, 94 F.3d 1223, 1229 (9th Cir. 1996). Insofar as the belief system and practice of Falun Gong meets the religious factor test of the five primary circuits, i.e., it also meets the test relied upon by the other circuits.

## C. Other Authorities Treat Falun Gong as a Religion

A broad range of authoritative sources agree that Falun Gong is a religion. The U.S. Commission on International Religious Freedom (USCIRF) has described Falun Gong as a religion since 2003. Pls' 56.1 ¶ 41. These reports consistently include Falun Gong practitioners in their discussions of China's "religious demography" and document the persecution of Falun Gong as a violation of religious freedom. *See, e.g.*, *id.* ¶ 42 (citing U.S. Commission on International Religious Freedom Reports ("USCIRF") for China (2013) stating that "Falun Gong adherents were among those reported to be held solely for their religious association"). In 2015, USCIRF reported concluded that "[f]or religious freedom, this has meant unprecedented violations against … Falun Gong practitioners." *Id.*

The U.S. Secretary of State included Falun Gong as a religion when introducing the 2017 USCRIF Annual Report. *Id.* ¶ 43. The U.S. Department of State analysis of the persecution of Falun

Gong in China is discussed under the heading "Freedom of Religion," and in several reports notes that Falun Gong "blends aspects of Taoism. Buddhism, and meditation techniques … with the teachings of Li Hongzhi." *See id.* ¶ 44 (citing Department of State, 2000 Human Rights Report on China). The Department of State Reports have treated Falun Gong as a religion up through 2009, at which point they discontinued independent reporting and included a link to the USCIRF reports, which continue to treat Falun Gong as a religion. *Id.* In 2015, the Acting Principal Deputy Assistant Secretary for Democracy, Human Rights, and Labor testified before the House Committee on International Relations, Subcommittee on Africa, Global Human Rights and International Operations on July 21, 2015 and said (inter alia) the mere belief in the practices of Falun Gong, even without public expression of its tenets, is sufficient grounds for the suppression of Falun Gong believers. *Id.* ¶ 45. The U.S. Congress has passed numerous resolutions condemning the persecution of Falun Gong believers for their *peaceful religious* beliefs. *Id.* ¶ 46.

The Congressional-Executive Commission similarly characterize the practice of Falun Gong as a religion.  In its 2005 Annual Report, for instance, CECC wrote: "A Party-led anti-cult campaign that targeted religious and spiritual activities in rural areas, including Falun Gong practitioners, continued through late 2004." (CECC, 2005 Annual Report). Pls' 56.1 ¶  48. It is available at https://chinacommission.gov/pages/annualRpt/annualRpt05/2005_3d_religion.ph.   A 2008 CECC report indicated that "the Chinese government continued to detain and punish Falun Gong practitioners and *members of other spiritual and religious groups*." (CECC, 2008 Annual Report). *Id.* It is available at https://www.cecc.gov/publications/annual-reports/2008-annual-report. *Id.* In a similar vein, a 2011 CECC report included Falun Gong with other religious traditions, describing one government goal as "to prevent Buddhists, Catholics, Falun Gong practitioners, Muslims, Protestants, and Taoists from freely practicing their beliefs. CECC, 2011 Annual Report, is available at https://www.cecc.gov/publications/annual-reports/2008-annual-report. *Id.* More recently in the

Commission's 2015 Annual Report, the Commission characterized the crackdown against groups deemed "cults' as the crackdown of Buddhist, Protestant house churches and "Falun Gong – a spiritual practice that the government continued to out- law." *Id.*[12]

U.S. congressional reports designate Falun Gong as a Religion. The U.S. Congress has also passed numerous resolutions condemning the Persecution of Falun Gong for their *peaceful religious* beliefs. *See, e.g.,* H. Res. 304, 108th Cong. (2004) (emphasizing that Falun Gong is a peaceful spiritual movement that originated in the People's Republic of China); H. H. Res. 605, 111th Cong. (2010) (describing Falun Gong as "a traditional Chinese spiritual discipline founded by Li Hongzhi in 1992, which consists of spiritual, religious, and moral teachings for daily life, meditation, and exercise, based upon the principles of truthfulness, compassion, and tolerance"); H. Res. 281, 113th Cong. (2014) (expressing concern over "large numbers of Falun Gong practitioners imprisoned for their religious beliefs"); S. Res. 232, 112th Cong. (2011) (emphasizing that "freedom of religion includes the right of Falun Gong practitioners to freely practice Falun Gong."). Pls' 56.1 ¶ 46.

Plaintiffs' expert witnesses concluded that Falun Gong is a religion, *id.* ¶¶ 51-52, 54, 58, 60, and, along with Plaintiffs, enumerated factors demonstrating Falun Gong satisfies Second and Third Circuit tests. *See supra* Statement of Undisputed Facts ("SOF") at § "Sincerely Held Beliefs," at 6-7*; see also* Pls' 56.1 ¶¶ 7-26, 28-39. Defendants' expert did not conclude that Falun Gong is not a religion. *Id.* ¶¶ 56-57.

Accordingly, since the undisputed evidence shows that the Falun Gong belief system is religious, and that Plaintiffs held a sincere belief in Falun Gong, the question of whether Falun Gong is entitled to protection under 42 U.S.C. § 1985(3) and 18 U.S.C. § 248(a)(2) and New York Civil Rights Law § 79-n should be resolved as a matter of law before trial.

---

[12] *See* http://www.cecc.gov/sites/chinacommission.house.gov/files/documents/2015%20AR%20Religion.pdf.

### C.    Defendants' Disagreements with the Tenets of Falun Gong Are Irrelevant.

That defendants reject Falun Gong as a religion based on their own personal disagreement with certain practices of Falun Gong, including a belief in miracles, life after death, the power of prayer, and their view on the causes of human suffering. Pls' 56.1 ¶¶ 49-50. Such personal disagreements with selected practices of a religion does not establish in any way that Falun Gong is not a religion.  The Supreme Court has long rejected a content-based definition of religion, *U.S. v Ballard,* 322 U.S. 78, 87 (1944), and has instead held that the First Amendment does not privilege some religious beliefs over others, *Torcaso v. Watkins,* 367 U.S. 488, 495 (1961). As further noted by Plaintiffs, Defendants use such labels as "ridiculous," "inappropriate," "warped," "twisted," and "evil cult" to describe Falun Gong. Pls' 56.1 ¶ 49. Many established religions have been labelled cults.  Defendants' expert, Xia Ming was asked to comment on the many of the so called "inappropriate" Falun Gong beliefs shared by other religions.  (*See e.g.*, Dep. of Xia at 83-84 (charismatic leaders), 89-90 (belief in aliens), 91-93 (belief in supernatural abilities), 96 (religious prohibition of taking of medicine), 98 (religious views about sexuality) & 101 (apocalyptic religious teachings)). Pls' 56. ¶ 50. These labels do not create a genuine dispute of fact about the religious nature of Falun Gong.

## II.    DEFENDANTS' BASELESS AND TIME-BARRED COUNTERCLAIMS.

Virtually all of Defendants' counterclaims are based on wholly conclusory allegations that Plaintiffs attacked them in each of the encounters in which Defendants, in fact, initiated violence or intimidation against the Plaintiffs.  These counterclaims should be dismissed because they are baseless, untimely, and legally unsupportable.

### A.  Negligence claims incompatible with assault and battery allegations.

As a preliminary matter, all of the Defendants' negligence counterclaims must be dismissed because they are incompatible with the Defendants' allegations that Plaintiffs purportedly assaulted

them.  Therefore, Defendants Chu, Li, and Zhu's Fourth Cause of Action, and Defendant Wan's

Third Cause of Action must be dismissed.

While Plaintiffs recognize that it is acceptable to plead in the alternative, "when a plaintiff

brings excessive force and assault claims which are premised upon a defendant's allegedly intentional

conduct, a negligence claim with respect to the same conduct will not lie." *Tatum v. City of N.Y.*, No.

06 Civ. 4290 (BSJ)(GWG), 2009 WL 124881, at *10 (S.D.N.Y. Jan. 20, 2009) (quoting *Clayton v. City

of Poughkeepsie*, No. 06 Civ. 4881(SCR), 2007 WL 2154196, at *6 (S.D.N.Y. June 21, 2007)); *see also

Mazurkiewicz v. N.Y.C. Transit Auth.*, 810 F. Supp. 563, 570–71 (S.D.N.Y. 1993) ("Plaintiff cannot

argue that defendants engaged in intentional conduct that forms the basis of an assault and § 1983

excessive force claim and also argue that defendants were negligent towards plaintiff."); *Mazzaferro v.

Albany Motel Enters.*, 127 A.D.2d 374, 376 (3d Dep't 1987) ("[O]nce intentional offensive contact has

been established, the actor is liable for assault and not negligence, even when the physical injuries

may have been inflicted inadvertently . . . . There is, properly speaking, no such thing as a negligent

assault." (quotation marks omitted)).

Defendants' allegations are that Plaintiffs intentionally assaulted and battered them.  These

allegations are incompatible with a theory of negligence.  Defendants also have failed to state a legal

claim of negligence based on a purported duty owed to them by the Plaintiffs "to prevent harm as a

result of the dangerous situations and confrontations that they intentionally created."  2d Am.

Answer & Countercl. at 17 (ECF No. 70); 2d Am. Answer & Countercl. at 38 (ECF No. 71).

Plaintiffs know of no New York authority recognizing a duty "to prevent harm" during a

confrontation.  Even Defendants' own version of events belies that Defendants were solely

responsible for any physical violence.  For instance, in testifying about the January 3, 2016 incident

involving Plaintiff Cuiping Zhang, Defendant Wan admitted that she slapped the camera out of

Ms. Zhang's hands because she believed Ms. Zhang was taking pictures of her.  *See* Pls' 56.1 ¶ 62.  A

person taking pictures of another person on a public street does not owe a duty to that person to avoid being illegally assaulted by them in response.

Accordingly, the Defendants' negligence counterclaims should be dismissed.

## B. Defendant Zhu's counterclaims.

Many of Defendant Zhu's counterclaims are untimely. His Second, Third, and Fourth counterclaims (respectively, New York Civil Rights § 79-n, intentional infliction of emotional distress, and negligence) are untimely. They were filed in 2016, *see* Pls' 56.1 ¶¶ 63-4, and are based on incidents that (for the most part) occurred between 2009 and 2011, *id.* ¶ 65.[13] The statute of limitations on these claims is no more than three years. *See* C.P.L.R. § 214(2) (providing a three-year limitations period for statutorily-created claims); C.P.L.R. § 214(5) (providing a three-year statute of limitations for personal injury claims other than certain intentional torts). Defendant Zhu's counterclaims for assault and battery were also filed in 2016. Pls' 56.1 ¶ 66. Several of these counterclaims are based on incidents that occurred between 2009 and 2011. *Id.* ¶ 67.[14] However, these claims had a one-year statute of limitation. *See* C.P.L.R. § 215(3). Therefore, these counterclaims are time barred.

Additionally, Defendant Zhu's testimony does not support his counterclaims against Plaintiff Xu Ting. In his deposition, Defendant Zhu testified that Plaintiff Xu put a flier in front of him, allegedly placed it in his wheelchair, and "lightly scolded me." Pls' 56.1 ¶ 69. These allegations, even if they were true, do not support common law claims of assault, battery, intentional infliction of emotional distress, or negligence.

---

[13] Defendant Zhu alleged counterclaimed against Plaintiffs Bian Hexiang, Zhou Yanhua, Li Xiurong, and Xu Ting. The counterclaims against Bian, Zhou, and Li involved incidents in 2011 or earlier. Pls' 56.1 ¶¶ 67-68.

[14] Zhu's assault and battery counterclaims against Plaintiffs Zhou, Bian, Li and Cao all occurred between 2009 and 2011. Pls' 56.1 ¶ 64.

Accordingly, summary judgment should be granted on Defendant Zhu's Second, Third, and Fourth counterclaims against Plaintiffs Bian, Zhou, and Li; Defendant Zhu's First counterclaim against Plaintiffs Zhou, Bian, Li and Cao; and Defendant Zhu's counterclaims against Plaintiff Xu.

### C. Defendant Li's counterclaims.

There is no disputed fact as to Defendant Li's assault and battery and negligence counterclaims against Gao Jingying, Li Xiurong, Cao Lijun, Wei Min and Lo Kitsuen, since Defendant Li was unable at her July 2016 deposition to identify how any of these incidents occurred much less identify any of her purported assailants. *Id.* ¶¶ 75-76. Nor did she clarify these facts at her October 2016 deposition. *Id.* Therefore, there is no admissible evidence to support these counterclaims. As regards Li's counterclaim against Plaintiff Bian, Li admitted at her July 2016 deposition that he did not assault her. Pls' 56.1 ¶ 79. Therefore, there is no admissible evidence to support Li's assault and battery claim against Plaintiff Bian.

Moreover, the counterclaims that arose from incidents that allegedly occurred between 2009 and 2011, *id.* ¶¶ 71,[15] are untimely because assault and battery has a one-year statute of limitations, *see* C.P.L.R. § 215(3), negligence has a three-year statute of limitations, *see* C.P.L.R. 214 and these claims were not filed until 2016.

### D. Defendant Wan's counterclaims.

As for the counterclaims filed by Defendant Wan against Plaintiff Cuiping Zhang arising from the January 3, 2016 incident, as described *supra*, Wan admitted that she slapped the camera out of Ms. Zhang's hands because she believed Ms. Zhang was taking pictures of her. *See* Pls' 56.1 ¶ 62. Thus, Defendant Wan's counterclaim that Cuiping Zhang "shoved, pushed, grabbed, clawed, hit,

---

[15] These are the incidents involving Plaintiff Bian (incident occurred in 2009), Plaintiff Gao (incident occurred in 2011), and Plaintiffs Li Xiurong and Cao Lijun (incident occurred in 2011). Two of the incidents – involving Plaintiffs Wei and Lo occurred in 2014. Pls' 56.1 ¶ 71.

kicked, physically intimidated and threatened [Wan] with imminent bodily harm," *see* 2d Am. Answer & Countercl. at 15-16 (ECF No. 70), is baseless.

## CONCLUSION

Because there is no dispute of any material fact that Falun Gong is a religion protected by federal and state law, and Defendants' certain counterclaims are untimely and unsupported, summary judgment is appropriate on these issues.

Dated:  November 10, 2017              Sincerely,

                                           /s/

                                   Terri Marsh
                          HUMAN RIGHTS LAW FOUNDATION

                                 Jonathan Moore
                             Joshua S. Moskovitz
                        BELDOCK LEVINE & HOFFMAN LLP